Eileen KIRKWOOD; N.M. Mittica, individually and as trustee for N.M. Mittica, M.D., P.C., Profit Sharing Plan and N.M. Mittica, M.D., P.C., Pension Plan; Arthur Sternberger; and Arto Sales, Inc., individually and on behalf of all others similarly situated, Plaintiffs,

v.

Robert TAYLOR, Robert W. Hebeisen, Community Investment Enterprises Inc., Shearson/American Express Inc., Piper, Jaffray & Hopwood, Incorporated and Minnetonka Inc., Defendants.

Carl KAHN, Plaintiff,

v.

Robert R. TAYLOR, Robert W. Hebeisen, Community Investment Enterprises, Inc., Shearson/American Express Inc., Piper, Jaffray & Hopwood, Inc. and Minnetonka Inc., Defendants.

James LaVICTOIRE, Plaintiff,

v.

MINNETONKA INC., Robert R. Taylor, Robert W. Hebeisen, Community Investment Enterprises Inc., Shearson/American Express Inc., Piper, Jaffray & Hopwood, Inc., Dean Witter Reynolds, Inc., and Michael Gruidl, Defendants.

Edward GRACA, Plaintiff,

v.

MINNETONKA INC., Robert R. Taylor, Robert W. Hebeisen, Community Investment Enterprises Inc., Shearson/American Express Inc., Piper, Jaffray & Hopwood, Inc., Craig-Hallum, Inc., and Kurt Cleland, Defendants.

Melvin and Leone NEIDER, Plaintiff,

v.

MINNETONKA INC., Robert R. Taylor, Robert W. Hebeisen, Community Investment Enterprises Inc., Shearson/ American Express Inc., Piper, Jaffray

& Hopwood Inc., and Melvin Reiman,
Defendants.

Nos. 3–82 CIV 92, 3–82 CIV 858, 3–82
CIV 492, 3–82 CIV 493 and 3–82
CIV 494.

United States District Court,
D. Minnesota,
Third Division.

May 25, 1984.

On Amendment of Order June 6, 1984.

Dorsey & Whitney by James O'Hagan, and Perry Wilson, III, Minneapolis, Minn., for defendants Shearson/American Express and Piper, Jaffray & Hopwood, Inc.

Skadden, Arps, Slate, Meagher & Flom by Douglas Kraus, New York City, for defendants Mr. Taylor and Mr. Hebeisen.

Fredrickson & Byron by Terence Fruth, Minneapolis, Minn., for Minnetonka, Inc.

Gray, Plant, Mooty, Mooty & Bennett by Michael Flom, Minneapolis, Minn., for defendant Community Investment Enterprises.

Barrack, Rodos & Bacine by Leonard Barrack, and Daniel Bacine, Philadelphia, Pa., for plaintiffs Kirkwood et al.

Messerli, Roe, Balough & Kramer by Brian Lutterman, Minneapolis, Minn., for plaintiffs LaVictoire, Graca, and Neider.

## MEMORANDUM ORDER

ALSOP, District Judge.

This matter comes before the court upon the motion of defendants Shearson/American Express, Inc. and Piper, Jaffray & Hopwood, Inc. (hereinafter "Shearson" and "PJH") for summary judgment pursuant to Fed.R.Civ.P. 56 based on section 11 of the Securities Act of 1933, 15 U.S.C. § 77k(a). Shearson and PJH seek dismissal of the LaVictoire action, dismissal of the Kahn action, dismissal of the Neider action as to Shearson only and partial summary judgment in that action for Piper, partial summary judgment for both Shearson and Piper in the Graca action, and summary judgment and dismissal for both Shearson and PJH in the Kirkwood class action as well as decertification of the Kirkwood class. Defendants Robert Taylor, Robert Hebeisen and Minnetonka, Inc. (the "Minnetonka defendants") join in the motions as does defendant Community Investment Enterprises Inc. ("Community"). Plaintiffs oppose the motions.

■ Section 11(a) of the Securities Act of 1933, 15 U.S.C. § 77k(a) (hereinafter the 1933 Act) provides in part that:

In case any part of the registration statement, when such part became effective, contained an untrue statement of a material fact or omitted to state a material fact required to be stated therein or necessary to make the statements therein not misleading, *any person acquiring such security* ... may ... sue .... (emphasis added).

Defendants contend that this section has been universally interpreted to require plaintiffs to prove that they acquired shares issued in the offering whose registration statement is claimed to be false or misleading. This tracing requirement, defendants argue, is strictly construed. It is not enough for plaintiffs to show that their stock might be traceable to offering stock; plaintiffs bear the burden of proving that their shares were actually issued in the offering. Defendants concede that the results of a strict application of the tracing requirement can be harsh, but note that Congress has presumably been aware of this interpretation of the statute and has chosen not to eliminate the tracing requirement.

Furthermore, defendants note that a strict standing requirement is consistent with the general structure of section 11. Section 11 imposes liability, without regard to a purchaser's reliance, for material misstatements or omissions in a registration statement covering a public offering. The

section in effect presumes that those who purchased stock in the public offering relied upon the allegedly misleading documents. Section 11, in contrast to section 10(b), does not require the plaintiffs to prove scienter. Plaintiffs in a section 11 case then are relieved of the burden of proving reliance and scienter. In order to invoke these benefits, however, plaintiffs must meet some strict procedural requirements. Section 11 is very narrow in this sense. The statute of limitations, for example, is one year from the date of offering, not the date of discovery of the allegedly false or misleading statement or omission. Section 11 was intended only to apply to new offerings, not to subsequent sales. Strict application of the tracing requirement, defendants argue, is consistent with the statutory scheme.

■ Defendants claim that plaintiffs cannot meet their burden of proving that they hold shares either directly purchased in the offering or traceable to the offering. Thus, plaintiffs lack standing to bring their section 11 claims and defendants are entitled to summary judgment on those claims.

Plaintiffs agree that section 11 contains a tracing requirement, but read the section differently than do defendants. Plaintiffs claim that they have affirmatively traced their shares to the March 5, 1981 public offering. Plaintiffs rely on four methods of tracing. The court will discuss each method in turn.

## I. The Direct Trace Method

The direct trace method is the easiest method to understand and prove. Under this method, stock is directly purchased in the underwritten public offering. A number of indicia will usually be present documenting the direct trace, including: an indication of interest by the broker on behalf of the customer, the customer's receipt of a preliminary prospectus with a legend in red ink (called a "red herring"), a notation on the purchase order ticket showing purchase in the offering, purchase at the offering price, lack of commission, language regarding the prospectus on the customer's con-

firmation slip, and special coding of the transaction by the brokerage firm. *See* "Affidavit of John Bacon."

Plaintiff Edward Graca in Civ. 3–82–493 purchased 200 shares of Minnetonka stock on the offering date through Craig-Hallum, Inc., one of the members of the investment syndicate that underwrote the public offering. Defendants admit that these 200 shares are traceable to the offering. Defendants move for partial summary judgment, however, on the grounds that Graca cannot trace the other 10,400 shares he alleges he purchased in the offering. Plaintiffs have not responded directly to this argument, but seem to imply that the tracing of the 200 shares is sufficient to deny defendants' motion.

The court agrees with defendants that plaintiff must trace all of the shares for which he claims damages to the offering. No efforts have been made to trace the 10,400 shares and discovery on the tracing issue has been closed. Therefore, in so far as count 1 of plaintiff Graca's complaint purports to raise a § 11 claim regarding the 10,400 untraced shares, plaintiff lacks standing to bring that count and defendants' motion will be granted. In so far as count 1 raises a § 11 claim based on the 200 traced shares, plaintiff has standing and defendants have not moved for summary judgment in that regard.

None of the other plaintiffs claims to have purchased his or her shares directly in the March 5, 1981 offering.

## II. The Fungible Mass Method

Plaintiffs Eileen Kirkwood and Carl Kahn claim that they can trace their shares through a method the court has termed the "fungible mass" method. Before the March 5, 1981 offering, approximately 6.9 million shares of Minnetonka, Inc. from previous offerings were already outstanding. Plaintiffs refer to these shares as "old" shares. About 2.8 million of those shares were registered in the name of Cede & Co., the nominee name of the Depository Trust Company (DTC). The DTC is a stock

clearing house, owned by a number of brokerage firms throughout the country. Participating brokers deposit the securities they hold in street name with DTC. Purchases and sales are accomplished by book entries crediting or debiting the brokerage firm's account, facilitating the transfer of securities without requiring physical movement of any certificates.

In the March 5 offering, 1.32 million shares of Minnetonka, Inc. were introduced into the market place. Plaintiffs refer to these shares as "new" shares. The DTC holds all certificates, both old and new, in its nominee name as pooled shares in a fungible mass for the benefit of all its members. Plaintiffs Eileen Kirkwood and Carl Kahn each purchased their stock after the offering date through brokerage firms that were members of the DTC. Plaintiffs claim that, since more than 25 percent of the shares of Minnetonka stock held by the DTC in a fungible mass were issued pursuant to the March 5, 1981 offering, plaintiffs own a proportionate interest in all of the DTC certificates, both old and new.

Furthermore, plaintiffs say Article 8 of the Uniform Commercial Code (U.C.C.), in Minn.Stat. §§ 336.8–301, 336.8–313 and 336.8–320, sets forth the rights and liabilities governing trading in investment securities without physical exchange or delivery of stock certificates. Plaintiffs cite § 336.-8–313(1)(d) and (2) as establishing that they became "owner[s] of a proportionate property interest in the fungible bulk." Minn. Stat. § 336.8–313(2). Thus, plaintiffs conclude, 25 percent of their shares were issued in the offering. Since they have sufficiently traced their shares, defendants' motion should be denied.

Defendants disagree with plaintiffs' fungible mass theory on several grounds. First, they say, the theory was rejected in *Lorber v. Beebe,* 407 F.Supp. 279 (S.D.N.Y. 1975). In that case, plaintiff's broker, Lehman Brothers Inc., bought the stock from defendant Blyth Eastman Dillion & Co. Inc. The purchase was completed in 1972 when Blyth delivered to a clearing house for Lehman's account a certificate directly traceable to one that had been issued before the effective date of the 1972 registration statement. Plaintiff did not take physical possession of his stock until a year later, when he received a certificate that came out of a Lehman house account holding both old and new shares on a fungible basis. The certificate thus could not be identified as either old or new. Plaintiff argued that the critical question was not the origin of the certificate delivered to his broker's clearing house account but instead the origin of the one delivered to him. Conceding his inability to identify conclusively the latter certificate as new, he contended the burden of identification should fall on defendants and that he should qualify for § 11 relief by showing that the certificate *might* have been traceable to "new" stock. *Id.* at 286.

The court rejected both contentions saying, "[I]t is insufficient that stock "might" have been issued pursuant to a defective statement. A plaintiff must show that it actually was so issued." *Id.* at 287. The court also held that the transaction cleared when plaintiff acquired the rights and remedies in the shares, i.e. when the old stock certificate was delivered to his broker's clearing house account. Thus, defendants in this case say, plaintiffs' fungible mass theory is not supported by the case law.

Article 8 of the UCC also does not support plaintiffs' theory, defendants contend. The purpose of § 8–313 of the UCC and of subdivision 1(d) is to provide a definition of when a transfer of a security occurs. The "fungible bulk" reference is provided to delineate the rights of a purchaser in the event of insolvency. Defendants point to the 1977 Official Comment to Section 8–313 and to the Official Reasons for 1977 Change, 2A Uniform Laws Annotated (1977) at 220 (1983 Supplement). Both sources support the "protection against insolvency" interpretation. Defendants observe that the commentary makes no reference to section 11 or to any intent by the drafters of the UCC to alter the definition of tracing in section 11. The case plaintiffs cite to bolster their reading of the UCC

§ 8–313 as relevant to the tracing issue, defendants maintain, actually illustrates the exact situation that defendants contend the UCC § 8–313 and Minn.Stat. § 336.8–313(1)(d) were designed to cover—the insolvency of a financial intermediary. *United States v. Doyle*, 486 F.Supp. 1214, 1220–21 (D.Minn.1980). The case provides no support for plaintiffs' application of § 8–313 to the tracing issue.

Finally, defendants claim, common sense precludes plaintiffs' interpretation of the tracing requirement. Suppose purchaser A decides to buy on January 3, 1981, 500 shares of stock and hold them in the street name of his broker. His broker on that day buys 500 shares for him and his broker's account at the DTC is credited for 500 shares. On March 5, the offering takes place and the new shares are issued. After some time, A's broker acquires new shares that are held on a fungible basis with the old. Under plaintiffs' theory, A would be the owner of a proportionate interest in the new shares even though A had no intent to purchase offering shares, did not see or rely on the registration statement and prospectus, and purchased prior to the offering. Even if the court somehow limited the class of plaintiffs to those who held shares on or after the offering date, all persons who held stock in street name on and after the offering date could claim a proportional interest in the shares. The issuer could find itself liable for far more than the number of shares issued in the challenged offering. For these reasons, defendants say, plaintiffs' fungible mass theory should be rejected.

The court agrees with defendants. The argument plaintiffs are making is merely a variation of one rejected years ago. Essentially, plaintiffs are showing only that their securities "might" have been issued in the offering and they are asking the court to presume that a pro rata portion of their shares are new shares. This approach is not too different from the argument that section 11 should extend to previously traded shares as well as to newly registered shares. In *Barnes v. Osofsky*, 373 F.2d 269 (2d Cir.1967) plaintiffs claimed that sec-

tion 11 should extend to previously traded shares. Plaintiffs argued that,

[O]nce it is agreed that § 11 is not limited to the original purchasers, to read that section as applying only to purchasers who can trace the lineage of their shares to the new offering makes the result turn on mere accident since most trading is done through brokers who neither know nor care whether they are getting newly registered or old shares.... [I]t is often impossible to determine whether previously traded shares are old or new, and tracing is further complicated when stock is held in margin accounts in street names since many brokerage houses do not identify specific shares with particular accounts but instead treat the account as having an undivided interest in the house's position.

*Id.* at 271–272.

The court rejected that argument, holding that plaintiffs' reading would be inconsistent with the over-all statutory scheme and contrary to the legislative history. *Id.* The court agreed that its construction gave § 11 a rather accidental impact as between one open-market purchaser of stock already being traded and another, but nevertheless held that the agreement settling the § 11 claim need not extend to those who purchased after the offering but could not trace their shares. *See also Lorber v. Beebe*, 407 F.Supp. 279, 286–87 (S.D.N.Y. 1975) (relying on *Barnes* to dismiss plaintiff's § 11 claim when plaintiff could not prove whether he held "old" or "new" stock).

Similarly, in *McFarland v. Memorex Corp.*, 493 F.Supp. 631 (N.D.Cal.1980), plaintiff failed to allege that he had purchased pursuant to the allegedly misleading registration. He merely alleged that he tried unsuccessfully to purchase in the August 9 offering before he bought on the open market on September 6 and September 8. The court said, "This fact alone does not compel the inference that his shares were among the newly issued secu-

rities." *Id.* at 641. The court held that plaintiffs' lack of standing in and of itself would require dismissal of the section 11 claim. *Id.* at 642. The court said, "If plaintiff is to state a cause of action under section 11, he must allege that he purchased new stock. Alleging or proving that the stock, purchased in the open market, might have been issued pursuant to the registration statement does not meet this requirement." *Id.*

This court agrees with defendants that the case law does not support plaintiffs' fungible mass theory of tracing. In addition, the court agrees that the UCC and its Minnesota counterpart do not compel the result plaintiffs urge upon the court. Furthermore, the structure of section 11, with its strict standing and relaxed liability requirements, argues against plaintiffs' interpretation. Finally, the court is persuaded that plaintiffs' construction of the statute violates common sense: the logical extension of plaintiffs' fungible mass theory would, as defendants note, effectively circumvent the tracing requirement. Accordingly, plaintiffs Eileen Kirkwood and Carl Kahn do not have standing based on the "fungible mass" theory of tracing to bring their section 11 claims.

## III. *The Contrabroker Method*

Plaintiffs Arthur Sternberger and Arto Sales, Inc. (named plaintiffs in the Kirkwood class action) and plaintiff Carl Kahn in his individual action [1] claim that they can trace their shares through a method the court has termed the "contrabroker" method. Plaintiff Kahn claims that he purchased his shares from his broker, Charles Schwab & Company, Inc. Charles Schwab purchased the 2,000 shares for Kahn's account from Dain Bosworth, Inc. (the contrabroker). In his transaction, Dain Bosworth was not acting for its own customer but was trading for its house account (or "making a market" in the stock). Since Dain was an underwriter of the March 5

offering, plaintiff Kahn says that the stock purchased by Schwab from Dain is traceable to the offering. Plaintiffs Sternberger and Arto Sales, Inc. similarly claim to have purchased from Shearson, one of the co-managing underwriters of the offering.

The court finds that plaintiffs have not met the tracing requirements of § 11. Plaintiff would have the court assume that Dain's house account inventory contained only new stock up through the date of Kahn's purchase. There is no evidence that Dain was not a market-maker in Minnetonka, Inc. stock either before or after the offering date. If Dain was a market-maker, its inventory could just as easily include old as well as new stock. Plaintiff Kahn has merely shown that he "might" have purchased offering shares.

Plaintiffs Sternberger and Arto Sales, Inc. have also not shown that just because they purchased from an underwriter that they necessarily bought only new offering stock. Obviously at some point plaintiffs' assumption must be false; otherwise anyone who ever purchased from a participant in the underwriting after the offering date could claim he or she bought "new" stock under this contrabroker theory. Plaintiffs Sternberger and Arto Sales, Inc.'s problems are exacerbated by their failure to identify any shares purchased from Shearson, let alone show that the shares were "new" shares. *See* "Supplemental Answers to Interrogatories of Shearson/American Express, Inc. and Piper, Jaffray & Hopwood, Inc.—Set 1" at 7–8.

The court concludes that plaintiffs Kahn, Sternberger and Arto Sales, Inc. do not have standing based on the "contrabroker" theory of tracing to bring their section 11 claims. Accordingly, count II in the *Kahn* complaint, brought against all defendants, will be dismissed. As count II is the only count brought against defendants Shearson, PJH, and Community, the motion of those defendants for summary judgment on count II and dismissal of the lawsuit

---

**1.** Kahn in his prayer for relief asks for class certification but nowhere else indicates that his is a class action. Class certification has not been requested or granted. Thus the court will treat Kahn's action as an individual one.

against them will be granted. In so far as Minnetonka, Inc. joins that motion, the motion for summary judgment on count II will be granted. Plaintiff Kahn in count I still has a § 10(b) claim against defendants Taylor, Hebeisen, and Minnetonka, Inc.

## IV. *The "Heritage" Method*

Plaintiffs N.M. Mittica, M.D., P.C., Profit Sharing Plan and N.M. Mittica, M.D., P.C., Pension Plan (hereinafter the Plans) in the Kirkwood class action and plaintiffs LaVictoire and Neiders in their individual actions claim that they can trace their shares through what this court has termed the "heritage" method. This method is the most complex of the methods plaintiffs advance.

Plaintiffs contend that they purchased stock in the over-the-counter market and received stock certificates registered in their individual names. In the records of Minnetonka's stock transfer agent, plaintiffs identified by code number the certificates they had received. Then plaintiffs identified the particular certificates from which their individual certificates were issued. The process was continued until plaintiffs determined the ultimate origin of their certificates. Some of those certificates were expressly issued in the March 5, 1981 offering. Thus, plaintiffs maintain, they can trace their shares to the offering.

Defendants argue that this tracing only shows that the shares "might" have been issued in the offering. First, defendants say, not all of the shares in certificates through which plaintiffs trace were offering shares. Plaintiffs cannot prove that the shares they received were traceable to the new versus old certificates. For example, defendants explain, the plaintiffs Neiders received three certificates for their stock, numbered MU038,125 representing 1,000 shares, MU038,126 representing 500 shares and MU038,286 representing 500 shares. The first two certificates totalling 1500 shares were issued on the surrender of four different certificates, three of which could eventually trace part of their heritage to offering stock (MUO33,047,

MUO37,214 and MUO37,106) and one which could not (MUO37,312). That latter certificate represented 2020 shares. Defendants explain that this one certificate with 2,020 shares could have produced plaintiffs' 1500 shares just as easily as the other three certificates totalling 7,490. Clearly all 9,510 shares (2,020 and 7,490) did not become part of plaintiffs' current certificates. It is just as likely that those certificates trace to "old" shares, then, as to "new". Plaintiffs' third certificate totalling 500 shares was issued on the surrender of four certificates, three necessarily containing offering shares but one (MUO37,733) for 6,550 shares containing 5,500 old and 1,000 new shares. Since plaintiff received a certificate for only 500 shares, those shares could easily trace to the 5,500 old shares instead of to the new shares. Plaintiffs have merely shown that they "might" have received offering shares.

Second, defendants say, even if the court assumes that every possible offering share in the tracing histories became part of plaintiffs' certificates, most of the plaintiffs cannot prove that all of their shares would be new shares. Plaintiff LaVictoire, for example, could only prove that at most 1,200 to 1,300 of his 5,000 shares were offering shares.

The court agrees that plaintiffs have merely shown that they might have purchased offering stock. The court has followed the charts submitted by defendants and agrees that in no case is it clear that all or even any of plaintiffs' shares are *necessarily* offering shares. In some instances, it is true that plaintiffs can "trace" all of their shares to offering shares if the court presumes that at each surrender of a stock certificate the offering shares were preserved or converted first. (*See, e.g.,* plaintiffs Neider). On the equally likely assumption that at each surrender all old shares were preserved or converted into the more recent certificate first, however, the court in no instance finds that plaintiffs' certificates could not be comprised solely of old shares. (*See, e.g.,* plaintiffs Plans—two certificates for 830 shares

and 1,000 shares were received on surrender of a certificate containing 9,450 shares, 6,200 of which were new but 3,250 of which were old).

Plaintiffs' position is similar to that of the plaintiff in *Lorber v. Beebe,* 407 F.Supp. 279 (S.D.N.Y.1975) where the plaintiff conceded that the certificate he received from a house account which held both old and new shares could not be conclusively identified as new. *Id.* at 286. Plaintiff in that case, like plaintiffs in this one, failed to show that his stock was *actually* issued in the offering. It was just as true in 1967 when *Barnes v. Osofsky,* 373 F.2d 269 (2d Cir.1967) was decided as it is today that reading section 11 to apply only to purchasers who can actually trace the lineage of their shares to the offering "makes the result turn on mere accident since most trading is done through brokers who neither know nor care whether they are getting newly registered or old shares." *Id.* at 271–72. It was and remains a fact that, "[I]t is often impossible to determine whether previously traded shares are old or new," *id.* at 272. Plaintiffs' assumption that all "new" shares should be deemed preserved or incorporated into the more recent stock certificates is but a more sophisticated version of the argument that, since plaintiffs cannot tell whether they have old or new shares, those shares should be treated as new and plaintiffs should be granted standing.

Accordingly, the court finds that plaintiffs Plans, LaVictoire and Neiders do not have standing based on the "heritage" theory of tracing to bring their section 11 claims. Thus, in the *LaVictoire* action, defendants' motion for summary judgment on count I of the complaint will be granted and the action against defendants Hebeisen, Community, Shearson, and PJH will be dismissed. Plaintiff LaVictoire will continue to have a § 10(b) claim against Minnetonka, Inc. and Robert Taylor and a § 10(b) and state law claims against defendants Dean Witter Reynolds, Inc. and Michael Gruidl.

In the *Neider* action, defendants' motion for summary judgment on count I against all defendants will be granted and the action against defendants Hebeisen, Community, and Shearson will be dismissed. Plaintiffs Neider will continue to have a § 10(b) claim against Minnetonka, Inc. and Robert Taylor and a § 10(b) and state law claims against defendants PJH and Melvin Reiman.

In the *Kirkwood* class action, plaintiff Plans do not have standing through the so-called "heritage" method, plaintiff Eileen Kirkwood does not have standing through the "fungible mass" theory, plaintiffs Sternberger and Arto Sales, Inc. do not have standing through the "contrabroker" method and plaintiff Mittica has failed to show he purchased stock, much less that he purchased offering stock. None of the named class representatives in the *Kirkwood* class action appears to have standing to bring a section 11 claim. Accordingly, defendants' motion for summary judgment on count II against all defendants will be granted and the action will be dismissed against defendants Shearson and PJH.

## V. *Class Decertification*

Defendants Shearson and PJH have moved to decertify the class in the *Kirkwood* action on the grounds that none of the named plaintiffs is an adequate representative of the class with section 11 claims, since none of them has standing to bring those claims.

Defendants point to *Zinser v. Continental Grain Co.,* 660 F.2d 754 (10th Cir.1981), *cert. denied* 455 U.S. 941, 102 S.Ct. 1434, 71 L.Ed.2d 652 (1982). In that antitrust case, the court had certified in 1975 three classes of farmers who sold wheat in various areas of the country over a particular period. Discovery eventually revealed that none of the three named plaintiffs sold directly to any defendant but instead each sold to a middleman who in turn sold to a grain exporter. The majority of the class members also did not sell to any defendant.

In 1977, the Supreme Court decided *Illinois Brick Co. v. Illinois,* 431 U.S. 720, 97

S.Ct. 2061, 52 L.Ed.2d 707, *reh'g. denied,* 434 U.S. 881, 98 S.Ct. 243, 54 L.Ed.2d 164. The trial court then held that *Illinois Brick* precluded an antitrust action by one who was merely an "indirect seller" to the defendants. Since none of the named class representatives and few of the class members sold directly to defendants, the court concluded that a continuation of the class actions was not warranted. With the three class representatives unable to proceed, the court applied Fed.R.Civ.P. 23(a) and refused to recertify the class. When that ruling was challenged on appeal, the circuit court held that the trial judge considered all relevant factors and did not abuse his discretion when he refused to certify. *Zinser,* 660 F.2d at 761.

Defendants also cite *Vervaecke v. Chiles, Heider & Co.,* 578 F.2d 713, 719–20 (8th Cir.1978). In that case, plaintiff brought a securities fraud action under § 10(b). The district court granted summary judgment for defendant on the grounds that plaintiff could not show reliance. In addition, the district court struck the class allegations from the complaint saying that plaintiff "must be a member of the class which he purportedly represents." *Id.* at 719. The court noted that plaintiff would not be an adequate class representative because he could not recover on his individual claim, *id.,* and because it was uncertain whether he would maintain interest in vigorously pursuing the litigation on behalf of the class without a successful claim himself, *id.* at 720. Thus, defendants say, the class must be decertified.

Plaintiffs contend that decertification is inappropriate. They claim that upon certification the class itself attains a legal status distinct from the named plaintiffs' interest. *See* cases cited in "Plaintiffs' Memorandum" at 27. Decertification would, plaintiffs say, unfairly disenfranchise thousands of absent class members with clear standing, all because the named representatives lacked "technical" standing. Since the defendants cannot claim that all absent members lack standing, plaintiffs argue that the class' vested right to bring the action should not be rescinded.

Plaintiffs rely on *Sirota v. Solitron Devices, Inc.,* 673 F.2d 566 (2d Cir.1982) where a stipulation at the end of trial changed the class ending date. The named representatives purchased their stock after the new ending date and thus were not members of the class. Defendants claimed the class should be decertified and judgment against them reversed. The court held that the change need not be applied retroactively to the pretrial decision to certify. *Id.* at 572. The court said:

> Although a district court may decertify a class if it appears that the requirements of Rule 23 are not in fact met, it need not decertify whenever it later appears that the named plaintiffs were not class members .... Rather, the Supreme Court has stated, 'provided the initial certification was proper ... the claims of the class members would not need to be mooted or destroyed because subsequent events or the proof at trial had undermined the named plaintiffs' individual claims.' ... Here ... there was no need for decertification .... [T]he subsequent definition of the class to exclude the individual named plaintiffs did not require decertification of the class.

*Id.*

Finally, plaintiffs argue that the court could provide for the appointment of a new representative from the existing class, citing *Carpenter v. Stephen F. Austin State University,* 706 F.2d 608 (5th Cir.1983) and *In re Nissan Motor Corporation Antitrust Litigation,* 82 F.R.D. 193 (S.D.Fla. 1979). In *Carpenter,* the appellate court refused to decertify the class. The class claim had been determined on the merits. The court said that, if the district court reevaluated the class and found the representatives to be inadequate, the appropriate step would be appointment of new representatives, not decertification. The circuit court found that the named representatives were proper representatives for the rest of the class.

In *Nissan,* defendants' motion to dismiss two named plaintiffs was granted. The

court said that as purchasers of automobiles beyond the class ending date, they were not members of the class and therefore were inadequate representatives under Rule 23(a)(4). The court said the class would be dismissed unless within 30 days another member of the class was granted leave to intervene.

The court finds that the class will be decertified as to the § 11 claim. Plaintiffs' *Sirota* case was decided before the Supreme Court's decision in *General Telephone Co. of Southwest v. Falcon*, 457 U.S. 147, 102 S.Ct. 2364, 72 L.Ed.2d 740 (1982). In that case, the Court was called upon to decide whether the plaintiff, a Mexican-American who complained of discrimination in promotion, was properly permitted to maintain a class action on behalf of Mexican-American applicants whom defendant did not hire. The district court had certified a class including employees and unsuccessful applicants. The court noted that it had

repeatedly held that 'a class representative must be part of the class and 'possess the same interest and suffer the same injury' as the class members'.

*Id.* at 156, 102 S.Ct. at 2370. The Court said that there was a wide gap between an individual's claim of discrimination and the existence of a class who had suffered the same injury so that the claims would share common questions and the individual's claim would be typical of the class claim. In a footnote, the Court observed that the commonality and typicality requirements of Rule 23(a) tended to merge:

Both serve as guideposts for determining whether under the particular circumstances maintenance of a class action is economical and whether the named plaintiff's claim and the class claims are so interrelated that the interests of the class members will be fairly and adequately protected in their absence. Those requirements therefore also tend

to merge with the adequacy-of-representation requirement. . . .

*Id.* at 157 n. 13, 102 S.Ct. at 2371 n. 13. With no proof of commonality or typicality, the Court held that the district court had erred in certifying the class.

The Court referred to the conditional nature of class certification, saying that even after entry of the certification order, the judge remains free to modify the order in light of subsequent developments in the litigation. The Court said that, "[S]uch an order, particularly during the period before any notice is sent to members of the class, 'is inherently tentative'." *Id.* at 160, 102 S.Ct. at 2372. While this flexibility enhanced the usefulness of the class action device, the Court emphasized that "actual, not presumed, conformance with Rule 23(a) remains . . . indispensable." *Id.*

The viability of the *Sirota* case, then, is questionable in light of *General Telephone*. The other cases plaintiffs cite are distinguishable. Three of them [2] involved a challenge to the class on the grounds that events subsequent to the certification mooted the named plaintiff's and thus the class claim. The courts held that a live controversy nonetheless remained between the defendants and the class. The fourth case is not on point. [3]

In the case at hand, plaintiffs claim has not been mooted by subsequent events. Instead, additional discovery has shown that plaintiffs never had standing to bring their section 11 claims. The class that was certified was inherently tentative. No notice has ever been sent to the putative class members. Even at the time of certification, defendants argued that plaintiffs would be unable to trace their stock and thus could not meet Rule 23(a)(3)'s typicality requirement. *See* "Memorandum Order", November 17, 1982 at 7. While the court lacked enough information at that time to determine whether or not plaintiffs

---

**2.** *Franks v. Bowman*, 424 U.S. 747, 96 S.Ct. 1251, 47 L.Ed.2d 444 (1976); *Sosna v. Iowa*, 419 U.S. 393, 95 S.Ct. 553, 42 L.Ed.2d 532 (1975) and *Georgia Association of Retarded Citizens v. McDaniel*, 716 F.2d 1565 (11th Cir.1983).

**3.** *McCubbrey v. Boise Cascade Home & Land Corp.*, 71 F.R.D. 62 (N.D.Cal.1976).

would be able to trace, plaintiffs were aware of the risk that they might be unable to trace their stock to the offering.

Under *General Telephone*, it is clear that plaintiffs must be members of the class they purport to represent and must share the same injury. In *Carpenter,* the plaintiffs met that test and satisfied the commonality and typicality requirements. In contrast, in this case plaintiffs attempt to represent claimants with both § 10(b) and § 11 claims, even though plaintiffs' claims and the class claims are no longer "so interrelated that the interests of the class members will be fairly and adequately protected in their absence". *General Telephone, Co. of Southwest,* 457 U.S. at 157, n. 13, 102 S.Ct. at 2371 n. 13. It is no longer clear as required by Rule 23(a) that there exist questions of law or fact common to the class regarding the § 11 claims. As discussed at 1377–1378, *supra,* the law governing § 10(b) claims is different from the law governing § 11 claims. The named plaintiffs' claims are also no longer typical, since they cannot trace their shares. Finally, the named plaintiffs are no longer adequate class representatives on the § 11 claim: their interests no longer coincide as regards that claim, and they have no incentive to prosecute vigorously a claim that they cannot pursue individually.

The court concludes that it must decertify the class as regards the § 11 claim. While it is true that courts have sometimes appointed a new representative instead of decertifying the class when the named representative is no longer adequate, a careful examination of those cases show that usually the court was faced with this question at a much later stage in the litigation than this court finds itself. In *Sirota* and *Carpenter,* the class claims had been determined favorably for the class after trial. In *Nissan,* the cases were among a number of class actions consolidated for pretrial as multidistrict litigation. Judgment had already been entered in one case and affirmed. A number of classes had already been certified. The court in that case could probably be quite confident that other members of the class would step forward upon dismissal of the named representatives in one case.

In this case, defendants have moved for decertification long before trial. The class certified on November 17, 1982 has never even received notice of that certification. The class certification order itself states that it is conditional and "may be altered or amended prior to the decision on the merits...." *See* "Memorandum Order", November 17, 1982 at 10. Furthermore, tracing discovery has closed. Appointment of a new class representative for the § 11 claim, if one could be found, would necessitate reopening that discovery, delaying trial. Finding a class representative would involve notifying the putative members of the initial certification, explaining the problems with that certification, and inviting any suitable § 11 claimants to come forward, clearly an inappropriate role for the court. Finally, individual claims will be preserved against a statute of limitations defense by the tolling doctrine of *American Pipe & Construction v. Utah,* 414 U.S. 538, 94 S.Ct. 756, 38 L.Ed.2d 713 (1974).

The Honorable Paul Magnuson was confronted with a similar situation in *Donaldson v. The Pillsbury Company,* Civ. 4–74–183. Defendants moved for decertification, arguing that the class in that employment discrimination case was overbroad in light of current legal standards and that factual developments had eroded plaintiff's capacity to act as an effective class representative. The court found that a conflict between the interests of black males and white females made it impossible for the named plaintiff to represent adequately the conflicting claims of both blacks and whites and restructured the class in light of that finding. The court specifically denied a request for a stay of the proceedings so that unsuccessful applicants could be notified and perhaps intervene in the action.

Accordingly, the *Kirkwood* class action will be decertified in regard to the § 11 claim. Plaintiffs will still be allowed to maintain a class action on their § 10(b) claims.

The court finds that multiple parties are involved in these actions and that the rights and liabilities of some of those parties have been determined in their entirety. Specifically, the rights and liabilities of those parties against whom only a section 11 claim was brought have been determined by the court's decision on the tracing issue. Thus the court has power pursuant to Fed.R.Civ.P. 54(b) to direct the entry of a final judgment as to those parties if it feels that there is no just reason for delay.

■■■ No precise test exists for determining whether there is just reason to delay entry of judgment, thus the district court is free to consider any factor that seems relevant to a particular action, keeping in mind the policies the rule attempts to promote. 10 C. Wright & A. Miller, *Federal Practice & Procedure*, § 2659 at 100–101 (2d ed. 1983). The Eighth Circuit has listed the following factors as relevant to review of a Rule 54(b) certification. Those factors are as follows:

> (1) the relationship between the adjudicated and unadjudicated claims; (2) the possibility that the need for review might or might not be mooted by future developments in the district court; (3) the possibility that the reviewing court might be obliged to consider the same issue a second time; (4) the presence or absence of a claim or counterclaim which could result in setoff against the judgment sought to be made final; (5) miscellaneous factors such as delay, economic and solvency considerations, shortening the time of trial, frivolity of competing claims, expense, and the like.

*Hayden v. McDonald*, 719 F.2d 266, 269 (8th Cir.1983), *citing Allis-Chalmers Corp. v. Philadelphia Electric Co.*, 521 F.2d 360 (3d Cir.1975). Some but not all of those factors may be relevant in a particular case. *Id.*

■■ Since this certification involves multiple parties instead of multiple claims, the relationship between the adjudicated and unadjudicated claims is irrelevant. It is unlikely that the need for review would be mooted by future developments in this court because, with the exception of the *Graca* action in which judgment is not entered, these cases will not include § 11 claims at trial. These defendants will not be participants in the trial of the § 10(b) and related claims against other defendants. The court cannot conceive of a way in which the need for review of the dismissal of the § 11 claims against these defendants would be mooted by the subsequent trial of other defendants on other claims. Neither will the reviewing court be required to consider the same issue a second time: the proper application of § 11's tracing requirement will not arise in another context.

Without certification, these defendants will have to await the outcome of complex securities litigation before they will know whether the case against them is finally and properly dismissed. Meanwhile, they will have to remain prepared ultimately to defend these actions against them. In addition, if this court is wrong on the § 11 tracing requirement, a second trial by the same plaintiffs against these defendants would be necessary and would probably involve much of the same evidence and same witnesses. For all these reasons, the court concludes that no just reason exists for delaying the entry of judgment in favor of those defendants against whom only a section 11 claim has been asserted. Accordingly, judgment will be entered. *See, e.g., Backus Plywood Corp. v. Commercial Decal, Inc.*, 317 F.2d 339 (2d Cir.1963) (finding that Rule 54(b) certification of judgment that wholly terminated the action against the corporate defendant was proper). Judgment will not be entered for those defendants against whom additional claims have been asserted.

Upon the foregoing,

IT IS ORDERED That defendants' motion for partial summary judgment on the § 11 claim in the *Graca* action, Civ. 3–82–493, regarding the 10,400 untraced shares be and hereby is granted. Plaintiff Graca retains a § 11 claim regarding the 200 traced shares.

IT IS FURTHER ORDERED That defendants' motion for summary judgment on count II in the *Kahn* action, Civ. 3–82–858, be and the same hereby is granted. Plaintiff Kahn retains in count I a § 10(b) claim against defendants Taylor, Hebeisen and Minnetonka, Inc.

IT IS FURTHER ORDERED That the *Kahn* action, Civ. 3–82–858, be and the same hereby is dismissed with prejudice against defendants Shearson/American Express, Inc., Piper, Jaffray & Hopwood, Inc. and Community Investment Enterprises, Inc.

IT IS FURTHER ORDERED That defendants' motion for summary judgment on count I in the *LaVictoire* action, Civ. 3–82–492, be and the same hereby is granted. Plaintiff LaVictoire retains a § 10(b) claim against Minnetonka, Inc. and Robert Taylor and a § 10(b) and state law claims against defendants Dean Witter Reynolds, Inc. and Michael Gruidl.

IT IS FURTHER ORDERED That the *LaVictoire* action, Civ. 3–82–492, be and the same hereby is dismissed with prejudice against defendants Shearson/American Express, Inc., Piper, Jaffray & Hopwood, Inc., Community Investment Enterprises, Inc., and Robert Hebeisen.

IT IS FURTHER ORDERED That defendants' motion for summary judgment on count I in the *Neider* action, Civ. 3–82–494, be and the same hereby is granted. Plaintiffs Neider will retain a § 10(b) claim against Minnetonka, Inc. and Robert Taylor and a § 10(b) and state law claims against defendants Piper, Jaffray & Hopwood and Melvin Reiman.

IT IS FURTHER ORDERED That the *Neider* action, Civ. 1–82–494, be and the same hereby is dismissed with prejudice against defendants Shearson/American Express, Inc., Community Investment Enterprises, Inc. and Robert Hebeisen.

IT IS FURTHER ORDERED That defendants' motion for summary judgment on count II in the *Kirkwood* action, Civ. 3–82–92, be and the same hereby is granted. The named plaintiffs on behalf of the class retain a § 10(b) claim against defendants Minnetonka, Inc., Taylor, Hebeisen and Community Investment Enterprises.

IT IS FURTHER ORDERED That the *Kirkwood* action, Civ. 3–82–92, be and the same hereby is dismissed with prejudice against defendants Shearson/American Express, Inc. and Piper, Jaffray & Hopwood, Inc.

IT IS FURTHER ORDERED That the class certified in *Kirkwood*, Civ. 3–82–92, in regards to the § 11 claim be and the same hereby is decertified. The named plaintiffs will retain a class action on their § 10(b) claims.

IT IS FINALLY ORDERED That the clerk enter judgment as follows:

IT IS ORDERED, ADJUDGED AND DECREED That the *Kahn* action, Civ. 3–82–858, be and the same hereby is dismissed with prejudice against defendants Shearson/American Express, Inc., Piper, Jaffray & Hopwood, Inc. and Community Investment Enterprises, Inc.

IT IS FURTHER ORDERED, ADJUDGED AND DECREED That the *LaVictoire* action, Civ. 3–82–492, be and the same hereby is dismissed with prejudice against defendants Shearson/American Express, Inc., Piper, Jaffray & Hopwood, Inc., Community Investment Enterprises, Inc., and Robert Hebeisen.

IT IS FURTHER ORDERED, ADJUDGED AND DECREED That the *Neider* action, Civ. 3–82–494, be and the same hereby is dismissed with prejudice against defendants Shearson/American Express, Inc., Community Investment Enterprises, Inc. and Robert Hebeisen.

IT IS FINALLY ORDERED, ADJUDGED AND DECREED That the *Kirkwood* action, Civ. 3–82–92, be and the same hereby is dismissed with prejudice against defendants Shearson/American Express, Inc. and Piper, Jaffray & Hopwood, Inc.

## ON AMENDMENT OF ORDER

It has come to the court's attention that in its order of May 25, 1984 the court inadvertently assumed that a § 10(b) claim

was brought against defendant Community Investment Enterprises in the *Kirkwood* action. Consequently, the court did not dismiss the action against defendant Community. It now appears that there was no § 10(b) claim but only a § 11 claim against defendant Community. Since plaintiffs do not have standing to bring their § 11 claim and there is no § 10(b) claim, the action against Community will be dismissed. Accordingly, the order of May 25, 1984 is amended to read as follows:

IT IS ORDERED That defendants' motion for partial summary judgment on the § 11 claim in the *Graca* action, Civ. 3-82-493, regarding the 10,400 untraced shares be and hereby is granted. Plaintiff Graca retains a § 11 claim regarding the 200 traced shares.

IT IS FURTHER ORDERED That defendants' motion for summary judgment on count II in the *Kahn* action, Civ. 3-82-858, be and the same hereby is granted. Plaintiff Kahn retains in count I a § 10(b) claim against defendants Taylor, Hebeisen and Minnetonka, Inc.

IT IS FURTHER ORDERED That the *Kahn* action, Civ. 3-82-858, be and the same hereby is dismissed with prejudice against defendants Shearson/American Express, Inc., Piper, Jaffray & Hopwood, Inc. and Community Investment Enterprises, Inc.

IT IS FURTHER ORDERED That defendants' motion for summary judgment on count I in the *LaVictoire* action, Civ. 3-82-492, be and the same hereby is granted. Plaintiff LaVictoire retains a § 10(b) claim against Minnetonka, Inc. and Robert Taylor and a § 10(b) and state law claims against defendants Dean Witter Reynolds, Inc. and Michael Gruidl.

IT IS FURTHER ORDERED That the *LaVictoire* action, Civ. 3-82-492, be and the same hereby is dismissed with prejudice against defendants Shearson/American Express, Inc., Piper, Jaffray & Hopwood, Inc., Community Investment Enterprises, Inc., and Robert Hebeisen.

IT IS FURTHER ORDERED That defendants' motion for summary judgment on count I in the *Neider* action, Civ. 3-82-494, be and the same hereby is granted. Plaintiffs Neider will retain a § 10(b) claim against Minnetonka, Inc. and Robert Taylor and a § 10(b) and state law claims against defendants Piper, Jaffray & Hopwood and Melvin Reiman.

IT IS FURTHER ORDERED That the *Neider* action, Civ. 3-82-494, be and the same hereby is dismissed with prejudice against defendants Shearson/American Express, Inc., Community Investment Enterprises, Inc. and Robert Hebeisen.

IT IS FURTHER ORDERED That defendants' motion for summary judgment on count II in the *Kirkwood* action, Civ. 3-82-92, be and the same hereby is granted. The named plaintiffs on behalf of the class retain a § 10(b) claim against defendants Minnetonka, Inc., Robert Taylor and Robert Hebeisen.

IT IS FURTHER ORDERED That the *Kirkwood* action, Civ. 3-82-92, be and the same hereby is dismissed with prejudice against defendants Shearson/American Express, Inc., Piper, Jaffray & Hopwood, Inc. and Community Investment Enterprises, Inc.

IT IS FURTHER ORDERED That the class certified in *Kirkwood*, Civ. 3-82-92, in regards to the § 11 claim be and the same hereby is decertified. The named plaintiffs will retain a class action on their § 10(b) claims.

IT IS FINALLY ORDERED That the clerk enter judgment as follows:

IT IS ORDERED, ADJUDGED AND DECREED That the Judgment entered herein on May 25, 1984 be amended to provide as herein set forth.

IT IS FURTHER ORDERED, ADJUDGED AND DECREED That the *Kahn* action, Civ. 3-82-858, be and the same hereby is dismissed with prejudice against defendants Shearson/American Express, Inc., Piper, Jaffray & Hopwood, Inc. and Community Investment Enterprises, Inc.

IT IS FURTHER ORDERED, ADJUDGED AND DECREED That the *LaVictoire* action, Civ. 3–82–492, be and the same hereby is dismissed with prejudice against defendants Shearson/American Express, Inc., Piper, Jaffray & Hopwood, Inc., Community Investment Enterprises, Inc., and Robert Hebeisen.

IT IS FURTHER ORDERED, ADJUDGED AND DECREED That the *Neider* action, Civ. 3–82–494, be and the same hereby is dismissed with prejudice against defendants Shearson/American Express, Inc., Community Investment Enterprises, Inc. and Robert Hebeisen.

IT IS FINALLY ORDERED, ADJUDGED AND DECREED That the *Kirkwood* action, Civ. 3–82–92, be and the same hereby is dismissed with prejudice against defendants Shearson/American Express, Inc., Piper, Jaffray & Hopwood, Inc. and Community Investment Enterprises, Inc.