Steven ABBEY, On Behalf of Himself
and All Others Similarly
Situated, Plaintiff,

v.

COMPUTER MEMORIES, INC., Irwin Rubin, Raymond Brooke, Abraham Brand, Frederic A. Heim, Marshall Butler, Laurence Hootnick, Ted H. McCourtney, Jr., Frederic T. Boyer and Intel Corporation, individually; Prudential-Bache Securities, Inc., Ladenburg Thalmann & Company, Inc. and Cable Howse & Ragen, individually and as representatives of a defendant class, Defendants.

No. C–85–4892–EFL.

United States District Court,
N.D. California.

May 13, 1986.

Robert N. Kaplan, Kaplan, Kilsheimer & Foley, Edward A. Grossmann, Bernstein, Litowitz Berger & Grossmann, New York City, John E. Grasberger, Milberg Weiss Bershad Specthrie & Lerach, San Diego, Cal., Sherrie R. Savett, Berger & Montague, Philadelphia, Pa., John W. Allured, David B. Gold, A.P.C., San Francisco, Cal., for plaintiff.

J. Kelley Nevling, Jr., Rosenman Colin Freund Lewis & Cohen, New York City,

Richard B. Glickman, Rosenman Colin Freund Lewis & Cohen, San Francisco, Cal., Howard R. Cabot, H. Michael Clyde, Brown & Bain, P.A., Phoenix, Ariz., Chris R. Ottenweller, Andrew J. Wistrich, Brown & Bain, Palo Alto, Cal., for defendants.

## PARTIAL SUMMARY JUDGMENT

LYNCH, District Judge.

### I. Background

Defendants in this case have brought a motion for summary judgment on Count I of plaintiff Abbey's complaint.[1] Count I asserts a claim under section 11 of the Securities Act of 1933, 15 U.S.C. § 77k(a) ("section 11"). Defendants argue that they are entitled to summary judgment on Count I because, among other reasons, Abbey cannot possibly trace his shares to the offering upon which section 11 liability would be based.

> Section 11 provides in part as follows: In case any part of the registration statement, when such part became effective, contained an untrue statement of a material fact or omitted to state a material fact required to be stated therein or necessary to make the statements therein not misleading, any person acquiring such security ... may ... sue ....

*Id.*

There is no dispute among the parties that a plaintiff suing under section 11 must show that he or she purchased stock actually issued in the offering for which the plaintiff claims there was a false or otherwise misleading registration statement. Courts have universally held that "in order to have a valid § 11 cause of action, [the plaintiff] must plead and prove that his stock was issued pursuant to the particular registration statement alleged to be defective." *Lorber v. Beebe*, 407 F.Supp. 279,

286 (S.D.N.Y.1975); *see also Barnes v. Osofsky*, 373 F.2d 269, 271–73 (2d Cir.1967); *McFarland v. Memorex Corp.*, 493 F.Supp. 631, 641–42 (N.D.Cal.1980), *reconsideration granted*, 581 F.Supp. 878 (1984). This requirement has been referred to as the "new stock," *see McFarland*, 493 F.Supp. at 642, or "tracing," *see Kirkwood v. Taylor*, 590 F.Supp. 1375, 1377–78 (D.Minn. 1984), requirement. At issue in this motion is whether defendants are entitled to judgment as a matter of law because Abbey cannot fulfill the tracing requirement described above.

On August 23, 1983, defendant Computer Memories, Inc. ("CMI") made a public offering of approximately 2,000,000 shares of common stock pursuant to a registration statement and prospectus also dated August 23, 1983 ("the offering"). It is the August 23, 1983 registration statement ("the registration statement") upon which plaintiff bases his section 11 claim.

Abbey purchased a total of 10,000 shares of CMI stock. One thousand of these shares were purchased before the August 23, 1983 offering and therefore clearly cannot form a basis for a damages claim under section 11. *See Barnes v. Osofsky*, 373 F.2d 269, 272–73 (2d Cir.1967). The remaining 9,000 shares were purchased on August 29, 1983, approximately one week after the effective date of the registration statement. These shares were not purchased pursuant to the offering or from any of the participants in the offering, but were purchased in the open market at a price higher than the offering's price.

Abbey purchased his shares through Fidelity Brokerage Services, Inc. ("Fidelity"), a stock broker. However, Fidelity did not actually execute the stock purchase. Instead, Fidelity placed a purchase order through its subsidiary, National Financial

---

1. Although originally captioned in some of the defendants' papers as a motion to dismiss, this motion clearly must be treated as one for summary judgment because the defendants have submitted matters outside the pleadings in support of the motion. *See* Fed.R.Civ.P. 12(c).

Defendants' motion regarding Count I of Abbey's complaint was originally filed in papers which also included a motion to dismiss or for summary judgment on Count II of Abbey's complaint. Count II asserted a claim under section 12(2) of the Securities Act of 1933, 15 U.S.C. § 77l(2). At oral argument, the Court granted defendants summary judgment on Count II and took the section 11 motion under submission.

Services Corporation, Inc., with the Pershing division of Donaldson Lufkin & Jerette Securities Corporation ("Pershing"). Pershing then executed two purchases of CMI stock, totaling 9,000 shares, from Mayer & Schweitzer, Inc., a stock brokerage firm which serves as a market-maker for CMI's common stock.

The purchase of Abbey's CMI stock was effected between Pershing and Mayer & Schweitzer through the continuous net settlement system of the National Securities Clearing Corporation ("NSCC"). Under the continuous net settlement system used by NSCC, the CMI stock sold by Mayer & Schweitzer did not physically trade hands on the date it was purchased by Pershing. Rather, the trade was merely recorded as a part of the net adjustment made to the CMI accounts of Mayer & Schweitzer and of Pershing to reflect all of the two firms' respective trades for that day.

On September 6, 1983, the settlement date for the August 29, 1983 trade, the transfer of Abbey's CMI stock was effected between Pershing and Mayer & Schweitzer through an electronic bookkeeping entry made by the Depository Trust Company ("DTC"). The DTC maintains deposits of large quantities of various stocks for the benefit of its broker-participants. These deposits minimize the need for the physical transfer of shares when the participants engage in stock transactions among one another. Thus, all of the CMI shares purchased by Abbey were a part of the common pool of CMI shares held in DTC's vault on the day of the transfer. There is no evidence before the Court concerning whether Abbey ever took physical possession of his shares or whether they remained in DTC's vault. However, the important point for purposes of this motion is that it is undisputed that Abbey's CMI shares were at one time part of the CMI shares comingled in DTC's vault.

Defendants have submitted affidavits indicating that it is impossible for Abbey to show that his stock came from the offering. These affidavits state that the stock kept in DTC's vault was completely fungible and that it would therefore be impossible to determine the origin of Abbey's stock. Defendants argue that because it is impossible for Abbey to directly trace any of his shares to the offering, the defendants are entitled to summary judgment on Abbey's section 11 claim.

Abbey has not submitted any evidence refuting the defendants' claim that it is impossible for Abbey to directly trace any of his shares to the offering.[2] Rather,

2. In Abbey's original opposition papers, Abbey made no attempt to refute defendants' affidavits, arguing instead that direct tracing is not required under section 11. At oral argument, Abbey argued for the first time that the Court should not dismiss Count I based on the defendants' tracing argument until Abbey had conducted further discovery on the question of whether direct tracing was possible. Abbey did not submit any affidavits explaining why he had been previously unable to present facts refuting defendants' affidavits, as is required in such a circumstance. See Fed.R.Civ.P. 56(f). Nevertheless, the Court exercised its discretion under Rule 56(e), Fed.R.Civ.P. 56(e), by allowing Abbey to conduct the only discovery which he had specifically requested: the taking of Leonard Mayer's deposition. Abbey requested this deposition in an attempt to refute an earlier affidavit submitted by the defendants in which Leonard Mayer, Vice President of Mayer & Schweitzer, Inc., stated that it is impossible for Abbey to trace his CMI stock to the offering. The deposition has subsequently been submitted to the Court and contains no evidence refuting defendants' affidavits indicating that direct tracing is impossible.

Abbey has now requested that the Court grant him even further discovery. However, he has once again not given the Court any indication why this discovery was not conducted prior to the hearing on this matter. The discovery requested would involve taking the depositions of representatives of NSCC, DTC and Pershing. Abbey asserts that these depositions may provide evidence that some of the shares held by DTC in the common pool actually were issued in the offering. Even assuming such to be the case, Abbey would still not be able to directly trace his shares, given the fungible nature of the shares held by DTC. Thus, this discovery would not refute defendants' assertion that direct tracing is impossible but merely bolster Abbey's claim that his shares might have been issued in the offering. Because the Court's ruling holds that Abbey must do more than show that his shares might have been issued in the offering, the requested discovery is unnecessary and will therefore not be allowed.

Abbey makes the following three arguments against granting summary judgment: (1) that section 11 does not require "direct tracing" and that Abbey can fulfill the tracing requirement by producing circumstantial evidence showing that it is more probable than not that a certain percentage of his shares were issued in the offering; (2) that because Abbey's shares were comingled with other shares held in DTC's vault, Abbey must be considered as having held a proportionate interest in all the stock held by DTC, thereby creating an issue of fact as to whether any of the comingled shares can be traced to the offering; (3) that defendants are not entitled to summary judgment because they have not shown that none of Abbey's shares came from the offering. For the reasons described below, the Court rejects each of Abbey's arguments and grants the defendants' motion.

## II. Tracing Based on the Timing and Circumstances of the Trade

Abbey purchased 9,000 shares of CMI common stock approximately one week after the offering. The offering added 2 million shares of common stock to the 9 million shares previously outstanding. Abbey argues that the timing of his purchase combined with the fact that 18 percent of the shares then outstanding were new shares (2 million of the 11 million then outstanding) make it highly probable that at least some of his shares were from the

offering.[3] He contends that nothing in the language of section 11 precludes him from fulfilling the tracing requirement by simply showing by circumstantial evidence that a portion of his shares probably came from the offering.

Abbey's argument is inconsistent with the existing precedent. Although the language of section 11 does not clearly require direct tracing, courts have uniformly interpreted section 11 as requiring more than a showing that a plaintiff's stock "might" have come from the relevant offering. In *Kirkwood v. Taylor*, 590 F.Supp. 1375 (D.Minn.1984), the court granted summary judgment because none of the named plaintiffs had shown more than that they might have purchased new stock. *Id.* at 1383. There the court rejected three different tracing methods proposed by the plaintiffs because each only showed that the plaintiffs might have purchased new stock. *Id.* Similarly, in *Lorber v. Beebe*, 407 F.Supp. 279 (S.D.N.Y.1975), the court held that "it is insufficient that stock 'might' have been issued pursuant to a defective statement. A plaintiff must show that it actually was so issued." *Id.* at 287. Finally, in *McFarland v. Memorex Corp.*, 493 F.Supp. 631 (N.D.Cal.1980), this court stated that "[a]lleging or proving that ... stock, purchased in the open market, might have been issued pursuant to the registration statement" does not fulfill the new stock requirement.[4] *Id.* at 642.

**3.** Plaintiff's counsel argues that "when plaintiff Abbey purchased his 9,000 shares just one week later [after the offering], he did so from a pool comprised 18% of new shares. It is therefore reasonable to conclude that he purchased roughly 1,620 (18% of 9,000) new stocks." Plaintiff's Supplemental Memorandum in Opposition to Motions to Dismiss and/or for Summary Judgment at 8.

**4.** Abbey attempts to distinguish some of the cases cited herein by arguing that, with the exception of *Kirkwood v. Taylor*, those cases did not directly deal with the tracing issue before this Court. Plaintiff correctly notes that *McFarland* involved a failure to allege that the stock involved was new stock. *McFarland*, 493 F.Supp. at 642. However, in so holding, the *McFarland* court found that the plaintiff's allegation that he purchased shares in the open

market approximately one month after the relevant offering did not satisfy the requirement that he allege that his shares were new shares. *Id.* In this case, Abbey argues that a similar showing should allow him to avoid summary judgment. Abbey attempts to distinguish *Lorber v. Beebe* by arguing that there the court held that the shares involved were old shares. While the *Lorber* court did make such a finding, it also made an alternative finding that section 11 standing may not be based on a showing that the shares in question might be new shares. *Lorber v. Beebe*, 407 F.Supp. at 287.

Finally, the cases cited herein are particularly persuasive in light of the fact that Abbey has not cited, and the Court has not found, any cases supporting Abbey's argument that direct tracing is not required under section 11. *See generally* 3A H. Bloomenthal, Securities and Federal Cor-

Abbey argues that a direct tracing requirement is unfair because many purchasers of stock on the open market will, like Abbey, be unable to fulfill the tracing requirement. A similar argument has been previously rejected in an analogous situation. In *Barnes v. Osofsky*, 373 F.2d 269 (2d Cir.1967), the plaintiff argued that section 11 liability should be extended to stock traded prior to the relevant offering because of the difficulties in distinguishing between "old" and "new" stock. In responding to the plaintiff's argument against interpreting section 11 "as applying only to purchasers who can trace the lineage of their shares to the new offering," Judge Friendly acknowledged plaintiff's observation that "it is often impossible to determine whether previously traded shares are old or new, and that tracing is further complicated when stock is held in margin accounts in street names since many brokerage houses do not identify specific shares with particular accounts but instead treat the account as having an unallocated interest in the house's position," but he nevertheless held that basing section 11 liability on old shares "would be inconsistent with the overall statutory scheme." *Id.* at 272.

■■■ The Court believes that Judge Friendly's conclusion is equally applicable here. Relaxing the tracing requirement such that a plaintiff may fulfill it by showing even a high probability that some of his shares were from the relevant offering would be inconsistent with the narrow scope of potential liability envisioned by section 11. *See Kirkwood v. Taylor*, 590 F.Supp 1375; *Lorber v. Beebe*, 407 F.Supp. at 287; *cf. Barnes v. Osofsky*, 373 F.2d at 272–73. Section 11 limits its conclusive presumption of reliance to persons acquiring any securities issued pursuant to the registration statement, notwithstanding the obvious fact that a false or misleading statement in or an omission from a registration statement could easily affect the price of stock issued prior to the offering. *See Barnes*, 373 F.2d at 272. Section 11

simply was not intended to provide a remedy to every person who might have been harmed by a defective registration statement. The Court believes that the language of section 11 and the existing case law indicate that a plaintiff who can only show that his or her shares might have been issued in the relevant offering should not be given the benefit of section 11's conclusive presumption of reliance; such a person should be treated the same as individuals whose shares clearly were not issued in the offering.

■■ It is important to note that section 11's direct tracing requirement does not leave individuals who have been harmed by a defective registration statement completely without a remedy. Abbey, for example, may still pursue his lawsuit under his 10b–5 claim. The "direct tracing" requirement simply precludes a shareholder from taking advantage of section 11's relaxed liability requirements when the shareholder's connection to the relevant offering is so attenuated that he or she cannot directly trace his or her shares to the offering. In such cases, requiring a shareholder to pursue other remedies, which may require a showing of reliance, seems imminently reasonable.

### III. Tracing Based on the Fungible Mass Theory

There is no dispute that Abbey's shares were comingled with the other CMI shares held in DTC's vault. Abbey argues that because his shares were comingled he must be considered as having owned a fractional interest in each of the CMI shares then held as a "fungible mass" by DTC. Abbey notes that "[s]uch comingled ownership has long been recognized in several areas of commerce, including grain storage, investment certificate bailment, priority allocation in bankruptcy, and even money or coinage." Abbey argues that because he must be deemed as having owned a fractional share of all the stock held by DTC when his shares were purchased, an issue of fact

porate Law § 8.09 (1985 rev.); 3 L. Loss, Securities Regulation 1731 n. 160 (1961 ed.)

exists as to whether *any* of DTC's shares then in its inventory were issued pursuant to the offering.

If the Court were to accept Abbey's fungible mass theory of tracing, an issue of fact would exist. Defendants have neither shown that none of the stock held by DTC was issued in the offering nor that it is impossible to trace the origin of any of that stock. Moreover, the Court concedes that, in plaintiff's words, it is a "virtual certainty" that some of the DTC stock was issued pursuant to the offering. However, the Court rejects the fungible mass theory as a method for tracing.

■ The purpose of section 11's tracing requirement is to limit standing to sue to those individuals who actually purchased shares issued pursuant to a defective registration statement. *See McFarland*, 493 F.Supp. at 641; *Kirkwood*, 590 F.Supp. at 1383; *Lorber*, 407 F.Supp. at 286. If the Court accepted Abbey's fungible mass argument, any purchaser of stock that had been part of a fungible mass containing new shares would have standing to sue. In essence, the tracing requirement would be transformed from a standing requirement into a means of allocating damages, because standing would seldom be lacking. This result would circumvent section 11's intended narrow application.

■ Moreover, the Court agrees with the *Kirkwood* court's observation that under the fungible mass theory "[e]ssentially ... plaintiffs are showing only that their securities 'might' have been issued in the offering and they are asking the court to presume that a pro rata portion of their shares are new shares." *Id.* at 1380. Admittedly, the fungible mass theory adds an additional wrinkle to the "might-have-been-issued" argument by asserting that the shareholder *actually* owned a fractional interest in at least one stock that is directly traceable to the relevant offering. However, the Court finds that while comingled ownership theories serve useful purposes in other areas of the law, they have no place in the section 11 standing context because the result would be circumvention of the intent of section 11.

IV. Appropriateness of Summary Judgment

■ Abbey's final argument against summary judgment is essentially based on the impossibility of Abbey's proving his own case. As discussed earlier, the defendants have submitted unrefuted affidavits indicating that it is impossible to determine the origin of Abbey's CMI shares. Apparently conceding that such is the case, Abbey argues that summary judgment is not appropriate because the defendants, who bear the burden of showing there is no genuine issue of a material fact, similarly cannot prove that Abbey's shares were not purchased in the offering and therefore may not be granted summary judgment.

Abbey's argument is specious. The defendants need not prove that none of Abbey's shares were issued pursuant to the offering in order to prevail on summary judgment. It is sufficient that they show that it is impossible for Abbey to prove his case.[5] It is "clear that the movant may discharge his burden by demonstrating that if the case went to trial there would be no competent evidence to support a judgment for his opponent. If no evidence could be mustered to sustain the nonmoving party's position, a trial would be useless and the movant therefore is entitled to a judgment as a matter of law." 10A C. Wright, A. Miller, & M. Kane, *Federal Practice and Procedure*, § 2727, at 130 (2d ed. 1983). The Court is satisfied that no genuine issue of fact exists as to the tracing issue because plaintiff is undisputably unable to directly trace his shares to the offering. Therefore, defendants are granted summary judgment on Count I of Abbey's complaint.

IT IS SO ORDERED.

*Lorber*, 407 F.Supp. at 286.

---

5. Abbey clearly bears the ultimate burden of directly tracing his shares to the offering. *See*