**In re PIZZA TIME THEATRE SECURITIES LITIGATION.**

**This Document Applies to All Actions.**

**No. C–84–20048(A) RPA.**

United States District Court, N.D. California.

Sept. 4, 1986.

William S. Lerach, Milberg, Weiss, Bershad, Specthrie & Lerach, San Diego, Cal., Barrack, Rodos & Bacine, Philadelphia, Pa., David B. Gold, Paul F. Bennett, San Francisco, Cal., Richard D. Greenfield, Greenfield & Chimicles, Haverford, Pa., for plaintiff.

Bruce G. Vanyo, Wilson, Sonsini, Goodrich & Rosati, Palo Alto, Cal., Tower Snow, Orrick, Herrington & Sutcliffe, Gary H. Anderson, Pillsbury, Madison & Sutro, San Francisco, Cal., Randolf J. Rice, Pillsbury, Madison & Sutro, San Jose, Cal., for defendants.

## AMENDED ORDER CERTIFYING PLAINTIFF CLASS

AGUILAR, District Judge.

Plaintiffs' complaint for violations of the federal securities laws alleges that defendants issued a registration statement, prospectus, and various reports in connection with a debenture offering that were materially false and misleading. After two motions to dismiss, the remaining federal claims are for violations of Section 10(b) of the 1934 Securities Exchange Act and Rule 10b–5 promulgated thereunder, and Section 11 of the 1933 Securities Act. Plaintiff's surviving pendent claims are for fraud and negligent misrepresentation.

Plaintiffs move to certify a plaintiff class pursuant to Federal Rule of Civil Procedure 23(b)(3). Defendants do not oppose certification of plaintiffs' Section 11 and Rule 10b–5 claims, but object to certification of the pendent common law claims for fraud and negligent misrepresentation. Defendants also dispute the adequacy of four of the named plaintiffs and the typicality of their claims.

## CERTIFICATION OF THE PENDENT CLAIMS

The prospective class includes plaintiffs from at least 28 states and 15 foreign jurisdictions. Defendants therefore contend that class treatment of the pendent tort claims would be unmanageable because the Court would have to apply dozens of separate legal standards. Defendants further argue that plaintiffs' proposed blanket application of California law to each class member's pendent claims would be fundamentally unfair and would violate both the Due Process and Full Faith and Credit Clauses of the United States Constitution under the reasoning of *Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 105 S.Ct. 2965, 86 L.Ed.2d 628 (1985).

In *Shutts*, the Supreme Court established a threshold inquiry to be resolved before a court undertakes the choice-of-law analysis requisite to a determination of the manageability of the proposed class. The inquiry focuses on the sufficiency of the contacts between the forum state and the claims.

### The Threshold Shutts Inquiry

*Shutts* involved a plaintiff class of 28,000 royalty owners residing in all 50 states, the District of Columbia, and several foreign jurisdictions. Three percent of the plaintiffs and fewer than one percent of the subject natural gas leases had any connection with the state of Kansas. The Kansas trial court applied Kansas law to all plaintiffs and leases, and the Kansas Supreme Court affirmed. The United States Supreme Court determined that the blanket application of Kansas law in the absence of significant contacts between Kansas and the claims violated the Due Process Clause of the Fourteenth Amendment and the Full Faith and Credit Clause of Article IV, section 1.

The Court relied on *Allstate Insurance Co. v. Hague*, 449 U.S. 302, 101 S.Ct. 633, 66 L.Ed.2d 521 (1981), in which it had utilized an aggregation of contacts analysis to

determine whether Minnesota law could apply in a suit arising from a motorcycle accident that occurred in Wisconsin and involved Wisconsin residents:

> [F]or a State's substantive law to be selected in a constitutionally permissible manner, that State must have a significant contact or significant aggregation of contacts, creating state interests, such that choice of its law is neither arbitrary nor fundamentally unfair.

*Id.* at 312–13, 101 S.Ct. at 639–40. The *Shutts* Court applied this logic to nationwide class actions, reasoning that a court has no greater latitude in applying its forum law in a class action than in other circumstances: "[T]he constitutional limitations laid down in cases such as *Allstate* ... must be respected even in a nationwide class action." 105 S.Ct. at 2981. The Court held:

> Kansas must have a "significant contact or aggregation of contacts" to the *claims* asserted by each member of the plaintiff class, contacts "creating state interests" in order to ensure that the choice of Kansas law is not arbitrary or unfair.

*Id.* at 2980 (emphasis added) (citation omitted).

The Court did not preclude blanket application of forum law to pendent claims in appropriate cases, and did not require each individual class member to have personal contacts with the forum. Rather, plaintiffs in the case at bench must demonstrate only that California has a sufficient aggregation of contacts to their *claims* to ensure that the application of California law would not be arbitrary or unfair.

■ In the instant action, California has a considerably greater aggregate of contacts with plaintiffs' claims than did Kansas in the *Shutts* case. Here, the defendant corporation was incorporated and headquartered in California, all the non-underwriter defendants were California residents, the alleged misrepresentations emanated from California, and many of the plaintiffs were California residents. The non-resident underwriter defendants received millions of dollars in fees from the California corporation, and the plaintiffs allege that the underwriter defendants conspired with the California defendants to defraud the plaintiffs. Not only are the contacts evident, but California has a strong interest in the allegedly fraudulent conduct of its corporations and residents, and in protecting its residents and others from such fraud. The application of California law to the pendent claims in this case would not be arbitrary.

■ A major factor in determining the fundamental fairness of applying California law is the expectation of the parties. *Shutts*, 105 S.Ct. at 2981. California's aggregate contacts with, and interest in, the events alleged in the complaint were self-evident at the time and sufficient to give notice to the parties that California law might apply in any subsequent litigation. Certainly the California corporation defendant and the California resident defendants have no cause to be surprised by application of California law. The non-resident underwriter defendants were selling the stock of the California corporation in California as well as throughout the nation, and should have anticipated the possible application of California law.

The Court concludes that the application of California law to the pendent claims in this case would be neither arbitrary nor unfair, and would not violate the Due Process and Full Faith and Credit clauses of the United States Constitution. It remains to consider whether it would be appropriate to apply California law to the pendent claims under the pertinent choice-of-law principles, and whether the claims satisfy the requirements of Rule 23.

### Choice of Law

■ On a motion for class certification the Court will not determine the merits of the case. Thus, the Court need not determine now what law *will* apply to the pendent claims but only what law is *likely* to apply in light of the choice-of-law rules of the forum state, in this case California.

*See Gee v. Tenneco, Inc.*, 615 F.2d 857, 861 (9th Cir.1980).

The Ninth Circuit has characterized California's choice-of-law inquiry as a three-step process. First, a court must examine the substantive law both in the foreign jurisdiction and in California to determine if these laws differ as applied to the facts of the particular case. Next, if the laws differ as applied, then the court determines whether both jurisdictions have an interest in having their laws applied. Finally, if they both have such an interest, then there is a "true conflict," and the court employs the "comparative impairment" approach to determine which jurisdiction's interest would be more impaired if its policy were subordinated to the policy of the other. "The conflict should be resolved by applying the law of the jurisdiction whose interest would be more impaired if its law were not applied." *Liew v. Official Receiver and Liquidator*, 685 F.2d 1192, 1196 (9th Cir.1982). The Ninth Circuit has also stated that "California will decline to apply its own law to a case brought in California only if it is shown that another state has a greater interest in having its law applied." *Nelson v. Tiffany Industries, Inc.*, 778 F.2d 533, 534 (9th Cir.1985). The California Supreme Court highlighted another factor in the comparative impairment analysis by stating:

> Another chief criterion in the comparative impairment analysis is the "maximum attainment of underlying purpose by all governmental entities. This necessitates identifying the focal point of concern of the contending lawmaking groups and ascertaining the *comparative pertinence* of that concern to the immediate case."

*Offshore Rental Co. v. Continental Oil Co.*, 22 Cal.3d 157, 166, 148 Cal.Rptr. 867, 583 P.2d 721 (1978).

The Ninth Circuit has affirmed the certification of pendent fraud claims in federal securities law class actions. In *Harmsen v. Smith*, 693 F.2d 932 (9th Cir.1982), *cert. denied* 464 U.S. 822, 104 S.Ct. 89, 78 L.Ed.2d 97 (1983), the district court included out-of-state stock purchasers in the plaintiff class that was eligible to recover under pendent California fraud claims. The Ninth Circuit affirmed, finding that defendants had failed to meet their burden of showing that

> the law of the other states relating to the pendent claims is significantly different from California's and, more importantly, that the interest of the other states would be impaired by application of California law to these non-resident plaintiffs.

*Id.* at 947.

The most recent decisions of the courts of this district have favored provisional certification of pendent fraud claims in securities cases. The court provisionally certified a class for common law claims of fraud and negligent misrepresentation in a securities case in *In re Victor Technologies Securities Litigation*, 102 F.R.D. 53 (N.D. Cal.1984) (Peckham, C.J.). In that case, the court determined first that individual questions did not predominate over common questions because the same evidence would be used to prove both the state and federal claims. It noted that "there are no individual acts of fraud or misrepresentation alleged, [and] the state law claims are predicated upon exactly the same conduct [material misrepresentations and omissions] that lies at the heart of the federal securities claims." *Id.* at 59. The *Victor Technologies* court concluded that the defendants failed to meet either prong of the *Harmsen* test and that the court would "apparently" apply California law to all plaintiffs. *See also, In re Activision Securities Litigation*, No. C–83–4369–MHP, Memorandum and Order (N.D.Cal. Dec. 2, 1985) (Patel, J.) [Available on WESTLAW, DCTU database] (certifying a class for common law claims relating to the issuance of securities); *Weinberger v. Jackson*, 102 F.R.D. 839, 847 n. 14 (N.D.Cal.1984) (Ingram, J.) (contention that individual issues would predominate is without merit because "the elements of fraud and negligence will in most part be covered by the consideration of the federal claims"); *In re Diasonics Securities Litigation*, 599 F.Supp. 447 (N.D.Cal.

1984) (Peckham, C.J.) (certifying a class for common law theories of fraud, deceit and negligent misrepresentation relating to the issuance of securities), *motion for decertification denied*, C–83–4584–RFP, Memorandum and Order (N.D.Cal. Feb. 26, 1986). *But see, Hudson v. Capital Management International, Inc.*, 565 F.Supp. 615, 630 (N.D.Cal.1983) (Patel, J.) (individual questions of fact and law predominate in the pendent claims); *McFarland v. Memorex*, 96 F.R.D. 357, 364 (N.D.Cal.1982) (Ingram, J.) (same).

The Court assumes for purposes of this motion only that defendants have demonstrated that the law of other states relating to the pendent claims is significantly different from California's. The Court further accepts *arguendo* defendants' proposition that the relevant jurisdictions have an interest in having their own tort laws applied in this case. Therefore, under California's conflict of laws analysis, the Court must determine which state's interest would be more impaired if its laws were not applied. For this purpose, the Court groups the relevant jurisdictions into two categories: California and all others.

The Court first notes that each of the interested jurisdictions shares the goals of deterring fraudulent conduct, protecting those wrongly accused of fraud, and providing a remedy for its residents who have been defrauded in the manner alleged here. Each jurisdiction, including California, has laws prohibiting fraud that accommodate these sometimes competing concerns. It is evident that the similarities in these laws vastly outweigh any differences.[1] It is also apparent that each jurisdiction would rather have the injuries of its citizens litigated and compensated under. another state's law than not litigated or compensated at all.

The securities claims at issue here are complex and expensive to litigate, and even if meritorious will produce relatively small individual recoveries. It is therefore highly unlikely that any plaintiff will bring an individual suit in California or any other interested jurisdiction; he must depend on the class action mechanism to vindicate his rights under the federal securities laws. Precluding plaintiffs from simultaneously asserting their common law claims arising from the same facts might effectively rob them of legitimate recoveries, and would emasculate significant and well-defined state interests. Congress never intended the federal securities laws to supplant state remedies, and the courts should not countenance any attempt to do so through a back door left ajar by the complexity of the cases and the inefficiencies of litigation.

Because plaintiffs face the choice of pursuing their pendent claims as part of the class action, or not at all, defendants cannot show that any jurisdiction has a greater interest in applying its own law than in assuring the maintenance of a class action. It follows that, assuming *arguendo* that application of numerous legal standards would pose fatal manageability problems under Rule 23, no state's interest would be more impaired by the blanket application of another state's law than by its own. It appears that the maximum attainment of the underlying purposes of all the states will be achieved best by certifying the class. Thus, the defendants have failed to carry their burden of showing that the interests of other jurisdictions would be

---

1. Defendants assert many differences in the elements and defenses to the common law claims. For example, they contend that states differ over the scope of the duty in negligent misrepresentation claims. They argue that New York extends liability only to those in strict privity with the plaintiff, and that New Jersey extends protection to those whose reliance is reasonably foreseeable. Defendants argue that California limits recovery to persons to whom the defendant made the misrepresentation with the intent to induce reliance.

Defendants further suggest that California does not apply contributory negligence principles, whereas Utah and New Hampshire allow the defense of contributory negligence.

Defendants also assert that states differ on whether plaintiff must prove the defendant's intent to deceive and whether fraud must be proven by a "preponderance of evidence" (California) or by "clear and convincing evidence" (New York).

more impaired by application of California tort law than by their own.

*Rule 23*

■ Plaintiffs satisfy the four requirements of Rule 23(a). Indeed, Defendants do not oppose certification of a Rule 10b–5 class. It is clear that "the similarities between a Rule 10b–5 action and common law fraud outnumber the differences." *Dekro v. Stern Brothers and Co.*, 540 F.Supp. 406, 418 (W.D. Missouri 1982). Thus, most aspects of the common law claims will be covered within the consideration of the federal claims. *See Weinberger v. Jackson*, supra, 102 F.R.D. at 847, n. 14. Further, the entire purported class bases its claims upon the identical conduct of defendants. There are no separate, individual acts of fraud alleged that might create individual issues of fact or law.

Rule 23(b)(3) empowers a court to certify a class when 1) common questions of fact or law predominate over individual questions and 2) "a class action is superior to other available methods for the fair and efficient adjudication of the controversy." Considering the lack of other available methods for adjudicating the common law claims in this case, it is clear that the proposed class action is superior to other mechanisms for fairly and efficiently adjudicating the claims.

■ However, defendants argue that they will be unduly prejudiced by certification of the pendent law claims. The Court cannot credit defendants' argument that they are prejudiced because the common law actions would not be brought absent the class mechanism. Undue prejudice cannot result from a judicial economy that permits persons to assert claims that would otherwise be lost solely due to the relative expense of litigating the claim. Further, the common law of many states may be less advantageous to defendants than is California law.[2] Defendants cannot be prejudiced by the application of a law that is favorable to them. Finally, assuming *arguendo* that the common law of some states is more favorable to defendants than the law of California, the prejudice to defendants is minimal and not undue. The relevant laws in all states are far more similar to each other than they are different, and any prejudice to defendants is outweighed by the prejudice to plaintiffs and the states of not certifying the class.

Considering the underlying purpose shared by all governmental entities, the interest of all jurisdictions in litigating fraud-related claims, and the other factors considered above, the Court finds it likely that California law will be applied to the pendent fraud and negligent misrepresentation claims. Manageability does not appear to be a problem at this time. The Court therefore provisionally certifies the pendent claims for class treatment, bearing in mind Chief Judge Peckham's observation in *In re Victor Technologies:*

> There is no need to issue a final certification on this point now; it is appropriate to certify the class provisionally and note that this class will be decertified if it develops that class treatment of the pendent claims is too cumbersome.

*Id.* at 60.

### THE ADEQUACY OF THE CLASS REPRESENTATIVES

*Stanley Herzstein*

■ Defendants contest the adequacy of Stanley Herzstein on the grounds that he has provided no support for his contention that he has an interest in Pizza Time debentures, and that his claim is atypical because he relied on the purchase decision of Bertram Silver. Both Herzstein and Barbara Silver, the successor in interest to Bertram, have testified under oath that Herzstein owns an interest in Pizza Time debentures.

---

2. The Court does not here find that any state's law is more or less favorable to defendants than another state's law. Yet defendants themselves allege that under California law plaintiffs must prove that the defendants acted with knowledge of falsity and an intent to deceive, whereas other states (such as Massachusetts, Michigan and Texas) do not require proof of intent to deceive.

Herzstein has also testified that he and Bertram Silver reached a joint decision to invest in Pizza Time debentures. These declarations are sufficient for the Court to determine that Herzstein is not an inadequate class representative due to a lack of interest in Pizza Time debentures or an atypical claim.

*Barbara Silver*

■ Defendants argue that Barbara Silver, executrix of the estate of Bertram Silver, should be rejected as a class representative because she is not sufficiently involved in the litigation. The Court finds upon reviewing the record that she is sufficiently involved in the litigation, understands her role as a class representative, and will adequately represent the interests of the absent class members.

*Beverly Galanter*

The Court finds that Galanter made a good faith effort to comply with discovery obligations as interpreted by her counsel. Furthermore, although defendants contend otherwise, Galanter has an interest in Pizza Time stock which she may seek to protect with this litigation. Yale Galanter is not an indispensible party for the purposes of representing the class.

Defendants also contend that Galanter has an atypical claim and cannot adequately represent the interests of the class because she was a passive investor who made no decision to purchase Pizza Time stock herself but rather relied on the purchase decision of a stockbroker.

■ In response, plaintiffs assert they are proceeding on a fraud on the market theory and that reliance on a stockbroker is therefore not relevant. The Court finds that although lack of reliance may be a defense, that goes to the merits of the case and cannot be considered in a certification motion. See, *In re Data access Systems Securities Litigation*, 103 F.R.D. 130, 139 (D.N.J.1984). Indirect reliance on the alleged misrepresentations will not render Galanter's claims atypical. Therefore, Galanter is an adequate class representative.

*Kline-Dainoff.*

Defendants oppose certification of Kline-Dainoff Ob-Gyn Associates, P.C.-Pension and Profit Sharing Plan (hereinafter referred to as "Kline-Dainoff") because Kline-Dainoff did not directly rely on the alleged misrepresentations and has not adequately demonstrated who will assume the costs of the litigation.

■ Like Beverly Galanter, Kline-Dainoff need not demonstrate direct reliance in order to be certified as a class representative. Further, Drs. Kline and Dainoff testified that they would personally assume any costs of litigation. Their testimony sufficiently establishes that they will assume the costs of litigation assignable to Kline-Dainoff. Defendants' contention that all beneficiaries of Kline-Dainoff must agree to allow the trust to act as class representative is unpersuasive. *Landy v. Amsterbam*, 96 F.R.D. 19 (E.D.Pa. 1982), is not inconsistent with this conclusion.

Good cause appearing therefor, the Court grants plaintiffs' motion to certify a class for the remaining federal and pendent claims.

IT IS SO ORDERED.