**In re SEAGATE TECHNOLOGIES SECURITIES LITIGATION.**

**No. C–84–20756(A)–WAI.**

United States District Court,
N.D. California.

April 1, 1987.

Sherrie R. Savett, Berger & Montague, P.C., Philadelphia, Pa., Richard Bemporad, Lowey, Dannenberg & Knapp, P.C., New York, Jules Brody, Stull, Stull & Brody, New York City, Ernest Kaufmann, Los Angeles, Cal., David B. Gold, Law Office of David B. Gold, San Francisco, Cal., for plaintiff.

James DiBoise, Wilson, Sonsini, Goodrich & Rosati, A.P.C., Palo Alto, Cal., for Seagate Technology and individual defendants.

Gary H. Anderson, Pillsbury Madison & Sutro, San Francisco, Cal., for Underwriters L.F. Rothschild Unterberg Towbin; Smith Barney Harris Upham & Co.; and Robertson Colman & Stephens.

## ORDER

INGRAM, District Judge.

Plaintiffs' motions for certification of plaintiff and defendant classes and subclasses were reargued on January 29, 1987. Having considered the papers and argument of counsel, the motions are CONDITIONALLY GRANTED as discussed below.

## I. INTRODUCTION

The background of this case is set forth in detail in the court's order of December 24, 1985. Briefly, this is an action alleging federal securities and common law fraud claims arising out of a February 9, 1983 public offering of Seagate common stock. Plaintiffs have moved to certify a plaintiff class of Seagate stock purchasers and a defendant class of underwriters.

Plaintiffs[1] allege that the registration statement and prospectus issued by defendant Seagate in connection with the February 9, 1983 public offering contained material misrepresentations and omissions. Plaintiffs further allege that certain misrepresentations were made after the public offering. Various individual officers and directors[2] of Seagate are named as defendants. Also named as defendants are the co-lead underwriters[3] who participated in the public offering.

Following defendants' motion to dismiss pursuant to Rule 12(b)(6), plaintiffs filed their consolidated amended complaint. The consolidated amended complaint alleges the following claims:

1. § 11 and § 15 of the 1933 Securities Act (15 U.S.C. §§ 77k and 77o );

2. § 12(2) and § 15 of the 1933 Securities Act (15 U.S.C. §§ 77l (2) and 77o );

3. § 10(b) of the [Securities Exchange Act of 1934] 1933 Securities Act, Rule 10b–5 promulgated thereunder, and § 20 of the [Securities Exchange Act of 1934] 1933 Securities Act[4] (15 U.S.C. §§ 78j(b), 17 C.F.R. § 240.-10b–5 and 15 U.S.C. 78t)

4. negligent misrepresentation; and

5. fraud.

The first and second counts are brought by plaintiffs Feldman, Claiman, Selig and Kovar against all defendants except Waite. The third, fourth, and fifth counts are brought by all plaintiffs against all defendants except the underwriters.

Defendants challenge the certification of the proposed plaintiff and defendant classes on a number of grounds. Defendants, however, have stipulated to the certification of the §§ 10(b)/Rule 10b–5 and 20 plaintiff class represented by plaintiffs Feldman, Selig, and Sorrel.[5] Accordingly, certification of that class is not at issue.

## II. CERTIFICATION OF PLAINTIFF SUBCLASS AS TO SECTION 11 and 12(2) CLAIMS UNDER THE 1933 SECURITIES ACT

Plaintiffs seek certification of the following plaintiff class:

[A]ll persons who purchased the common stock of Seagate between February 9, 1983 and August 22, 1984 (the "Plaintiff Class"). Excluded from the plaintiff class are the defendants herein, members of the immediate family of each of the individual defendants, any entity in which any defendant has a controlling interest, including but not limited to Dysan Corporation, and the legal representatives, heirs, successors or assigns of any such excluded party.

¶ 22. As to the §§ 11, 12(2) and 15 claims, plaintiffs seek certification on behalf of:

[T]hat portion of the Plaintiff Class which purchased the 3,000,000 shares of Seagate common stock issued in the February 9, 1983 public offering, either in

---

1. Plaintiffs in this consolidated action are: Albert L. Feldman, David Claiman, Joseph Selig, Leila Sorell, and Joseph Kovar. ¶ 7(a)–(e).

2. The officer and director defendants are: Alan F. Shugart, Finis F. Conner, C. Norman Dion, David T. Mitchell, Edward P. Glassmeyer, Douglas K. Mahon, Donald L. Waite, James O. Jacques, and Richard G. Certo. ¶¶ 10–18.

3. The co-lead underwriter defendants are: L.F. Rothschild, Unterberg, Towbin; Smith Barney,

Harris Upham & Co.; and Robertson, Colman, & Stephens. ¶ 9(a)–(d).

4. The caption of this count does not mention § 20. However, a subsequent paragraph (¶ 84) makes clear that plaintiffs are alleging § 20 liability.

5. The adequacy of plaintiff Claiman as a class representative is discussed *infra.*

the offering or in the aftermarket (the "Subclass").

¶ 23. The court examines whether the four requirements of Rule 23(a)—and one of the requirements of Rule 23(b)—are met as to this subclass.

### A. *Rule 23(a)*

#### 1. *Numerosity*

The consolidated amended complaint estimates that the purchasers of Seagate common stock offered on February 9, 1983 "number in the thousands." The court finds that the class is so numerous that joinder of all the class members would be impracticable. *Weinberger v. Jackson,* 102 F.R.D. 839, 844 (N.D.Cal.1984).

#### 2. *Commonality*

The gist of the complaint is that the registration statement and prospectus contained various material misrepresentations and omissions. Various aftermarket misrepresentations and omissions are also alleged. Common questions of law and fact exist sufficient to comply with Rule 23(a)(2). *Blackie v. Barrack,* 524 F.2d 891, 902 (9th Cir.1975), *cert. denied,* 429 U.S. 816, 97 S.Ct. 57, 50 L.Ed.2d 75 (1976).

#### 3. *Typicality*

The court finds this requirement met as to the subclass. Plaintiffs allege that "some or all of the shares purchased by Albert L. Feldman, David Claiman, Joseph Selig and Joseph Kovar were issued pursuant to the Registration Statement and Prospectus effective February 9, 1983." ¶ 7. This is all that is required for conditional certification of the § 11 claims.

The cases relied upon be defendants, *Abbey v. Computer Memories, Inc.,* 634 F.Supp. 870 (N.D.Cal.1986) and *Kirkwood v. Taylor,* 590 F.Supp. 1375 (D.Minn.1984), *aff'd* 760 F.2d 272 (8th Cir.1985), are not on point. Both *Abbey* and *Kirkwood* involve summary judgment motions brought after discovery which revealed that certain plaintiffs could not trace their shares back to the registration statement at issue. *Kirkwood,* in fact, involved the decertification of the § 11 claims at the summary judgment stage *after* those claims had been conditionally certified. Neither *Abbey* nor *Kirkwood* stands for the proposition that the class representatives must prove their ability to trace their shares in order to obtain conditional certification of the class.

#### 4. *Adequacy*

Defendants challenge only the adequacy of proposed class representative Claiman. Defendants argue that Claiman is an inadequate class representative because he did not appear for his deposition. The court finds that all proposed class representatives, including Claiman, appear able to prosecute this action vigorously. *Jackson,* 102 F.R.D. at 844–45. The court further finds that the named representatives do not have antagonistic or conflicting interests with the unnamed class members. *Id.* Finally, the court finds that the representatives' counsel are competent to prosecute this action. *Id.*

### B. *Rule 23(b)*

Plaintiffs seek certification of this subclass pursuant to (b)(3) of Rule 23. The issue is whether:

[Q]uestions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy. The matters pertinent to the findings include: (A) the interest of members of the class in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already commenced by or against members of the class; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; (D) the difficulties likely to be encountered in the management of a class action.

The court finds that the proposed subclass meets these requirements.

Defendants challenge the certification of the § 11 subclass as "unmanageable" within the meaning of Rule 23(b)(3)(D). Defendants assert that the tracing process makes such a subclass "unmanageable." Defendants' concern goes to the merits of the § 11 claim—and is best addressed at the summary judgment stage. *See supra*, at II.A.(3); *see also In Re Eagle Securities Litigation*, C–84–20382–(A)–WAI, slip op. at 15–16 (N.D.Cal. March 31, 1986) [Available on WESTLAW, DCT database].

Defendants also challenge the proposed § 12(2) subclass as "unmanageable." Defendants assert that individual inquiries regarding class member's "buy sell" relationship make such a subclass "unmanageable." The court rejects this argument. *Eagle*, slip op. at 17–18.

### C. Conclusion

The proposed subclass as to the §§ 11 and 12(2) claims is HEREBY CONDITIONALLY CERTIFIED pursuant to Rule 23(b)(3).

### III. CERTIFICATION OF PLAINTIFF CLASS AS TO PENDENT STATE LAW FRAUD CLAIMS

The court finds that the requirement of Rule 23(a)(1)–(4) are met as to counts four and five. *See supra*, at II. A (1)–(4). Two crucial issues exist, however, regarding predominance of common questions and "manageability" under Rule 23(b)(3). *First*, does the prospect of applying different states' laws to the common law fraud claim of foreign state plaintiffs [6] preclude class treatment of the claims? *Second*, do individual issues of proof as to reliance preclude class treatment of the claims? The court reluctantly admits that its position on these issues has been less than consistent. *Cf. McFarland v. Memorex Corp.*, 96 F.R.D. 357, 364 (N.D.Cal.1982) (certification of pendent state law fraud claims denied because foreign state law would apply and individual issues of proof as to reliance predominated) *and Eagle*, slip op. at 23–26 (same) *with Jackson*, 102 F.R.D. at 847 (certification of pendent state law fraud claims conditionally granted because claim that foreign state law would govern was premature and individual issues of proof regarding reliance did not predominate). The court takes this opportunity to clarify its position on these issues.

### A. Background

*McFarland* denied certification on the grounds that application of various foreign states' laws would "create a dominance of individual issues over common issues." 96 F.R.D. at 364. *McFarland* assumed that California fraud law would not govern the state law claims of the foreign state plaintiffs. *McFarland* did not engage in a conflicts of law analysis to test the validity of that assumption.[7] *McFarland* further denied certification on the grounds that individual issues of proof as to reliance existed.

The Ninth Circuit subsequently made clear that a three part conflicts of law test is appropriate to determine whether California or foreign state law would govern pendent state law claims. In *Harmsen v. Smith*, 693 F.2d 932, 947 (9th Cir.1982), *cert. denied*, 464 U.S. 822, 104 S.Ct. 89, 78 L.Ed.2d 97 (1983), the court held that a

---

6. The term "foreign state" refers to all states other than California. The term "foreign state plaintiffs" refers to plaintiffs who reside outside of California. Seagate stock issued pursuant to the February 9, 1983 registration statement and prospectus was qualified and sold in twenty-two (22) states including California. *See* Case declaration, filed August 1, 1985.

7. Certain courts have followed *McFarland's* assumption that the claims of foreign state plaintiffs will necessarily be governed by foreign state law. *See, e.g., In Re Storage Corp. Securities Litigation*, 630 F.Supp. 1072, 1080–81

(D.Colo.1986). *Sanders v. Robinson Humphrey/American Express Inc.*, 634 F.Supp. 1048, 1067 (N.D.Ga.1986), although not citing *McFarland*, also held that "the court ... would have no choice but to apply the law of each state in which a potential class member resides." Interestingly, *Sanders* cites *Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 105 S.Ct. 2695, 86 L.Ed.2d 628 (1985) as compelling this result. *Sanders* apparently interprets *Shutts* as eliminating the necessity of a conflict of law analysis altogether. This court finds no basis in *Shutts* for such a drastic result.

foreign state's law would apply where defendant carried the burden of showing that:

> [T]he law of other states relating to the pendent claims is significantly different from California's and, more importantly, that the interests of other states would be impaired by application of California law to these non-resident plaintiffs. [citations omitted].

This conflicts test has been characterized as a three step inquiry:

1. do the laws of the different jurisdictions conflict?
2. if the laws do conflict, do both jurisdictions have a legitimate interest in having their laws applied, such that a "true conflict" exists?
3. if a "true conflict" does exist, would the foreign state's interest be more impaired than California's interest were the foreign state's law not applied?

*Liew v. Official Receiver and Liquidator,* 685 F.2d 1192, 1196 (9th Cir.1982). Absent the defendant carrying this burden, California law would govern the foreign state plaintiffs' claims. *See Nelson v. Tiffany Industries, Inc.,* 778 F.2d 533, 534 (9th Cir.1985).

This court applied the conflicts test in *Jackson,* 102 F.R.D. at 847. *Jackson* allowed conditional certification of the pendent state law claims because defendants "only asserted the possibility of a conflicts problem"—rather than carrying their burden of showing an actual conflict. *Id.* Jackson further held that individual issues of proof as to reliance did not predominate. 102 F.R.D. at 847 n. 14. *Jackson* did not discuss or distinguish the *McFarland* decision.

This court's most recent decision returned to the reasoning of *McFarland.* Like *McFarland, Eagle* denied certification based on the *assumption* that foreign states' laws would govern the pendent state law claims. Like *McFarland, Eagle* did not apply a conflict of law analysis to test the accuracy of that assumption. *Eagle* distinguished *Harmsen* on the grounds

that *Harmsen* did not squarely address the issue of certification of pendent state law claims. *Eagle* cited *Phillips Petroleum Co. v. Shutts,* 472 U.S. 797, 105 S.Ct. 2965, 86 L.Ed.2d 628 (1985) as support for its decision denying class certification. Finally, *Eagle* reaffirmed the *McFarland* holding that individual issues of proof as to reliance would predominate. *Eagle* did not discuss or distinguish *Jackson's* holdings on these issues.

### B. Conflicts of Law Issue

#### 1. Conflicts Test

■ The court retreats from its *McFarland* and *Eagle* decisions. The court declines to *assume* that foreign states' law will govern the pendent state law claims of the foreign state plaintiffs. The fact that certain plaintiffs are foreign state residents does not necessarily mean that foreign state law will govern. The determination of whether foreign state law may govern can only be made after examining whether defendants have met their burden under *Harmsen.*

The court notes that every Northern District judge addressing this issue has adopted the analysis embraced by the court today. *See, e.g., In Re Pizza Time Theatres Securities Litigation,* 112 F.R.D. 15, 18–21 (N.D.Cal.1986) (Judge Aguilar); *In Re Diasonics Securities Litigation,* C–83–4584–RFP slip op. at 3–10 (N.D.Cal. February 26, 1986) (Chief Judge Peckham); *In Re Activision Securities Litigation,* 621 F.Supp. 415, 430–31 (N.D.Cal.1985) (Judge Patel); *In Re Computer Memories Securities Litigation,* 111 F.R.D. 675, 684–87 (N.D.Cal.1986) (Judge Lynch). While the court is not reluctant to stand alone, such a stance on this issue is no longer justified.

As to the "impairment of interest" prong of the conflicts test, the court notes a persuasive analysis adopted by Judge Aguilar in *Pizza Time* and Chief Judge Peckham in *Diasonics.* These decisions assume (*e.g., Pizza Time,* 112 F.R.D. at 20) that defendants are able to carry their burden as to the first two elements: conflicts exist

and foreign states have an interest in applying their own law. *Pizza Time* and *Diasonics* find, however, that the foreign state's interest in having the action proceed as a class action in California is greater than the foreign state's interest in not allowing the suit to proceed at all. *See Pizza Time*, at 20 ("Because plaintiffs face the choice of pursuing their pendent claims as part of the class action, or not at all, defendants cannot show that any jurisdiction has a greater interest in applying its own law than in assuring the maintenance of the class action."); *see also Diasonics*, at 8 ("In the present case, the class action format provides the best way to maximize all jurisdictions' common goals under the laws of fraud and negligent misrepresentation.") The court notes that the *Pizza Time* and *Diasonics* rationale poses a significant obstacle for defendants to overcome as to the "interest impairment" prong of the conflicts test.[8]

### 2. *Shutts Analysis*

*Shutts* set forth a constitutional minimum which must be met when a state applies its own law to claims involving foreign state plaintiffs. *Shutts* held that the application of Kansas law in the absence of significant contacts between Kansas and the claims violated the Due Process Clause of the Fourteenth Amendment and the Full Faith And Credit Clause of Article IV, section 1. The *Shutts* court stated:

> [F]or a State's substantive law to be selected in a constitutionally permissible manner, that State must have a significant contact or significant aggregation of contacts, creating state interests, such that choice of its law is neither arbitrary nor fundamentally unfair.

472 U.S. at 818, 105 S.Ct. at 2978, 86 L.Ed.2d at 646, *quoting Allstate Insurance Co. v. Hague*, 449 U.S. 302, 312–13, 101 S.Ct. 633, 639–40, 66 L.Ed.2d 521 (1981)

(plurality). The *Shutts* Court then stated 472 U.S. at 821, 105 S.Ct. at 2980, 86 L.Ed.2d at 648:

> Kansas must have a "significant contact or aggregation of contacts" to the claims asserted by each member of the plaintiff class, contacts "creating state interests" in order to ensure that the choice of Kansas law is not arbitrary or unfair.

*Quoting Allstate Insurance Co., supra.*

■ The court retreats from *Eagle* to the extent that *Eagle* holds that the presence of foreign state plaintiffs will preclude a finding of a "significant aggregation of contacts" within the meaning of *Shutts*. *Eagle*, slip op. at 25–26. Plaintiffs' contacts are simply a single factor to be considered in this analysis. *Shutts* specifically refers to "the *claims* asserted by each member of the plaintiff class." 472 U.S. at 821, 105 S.Ct. at 2980, 86 L.Ed.2d at 648 [emphasis added]. Plaintiffs' "claims" involve forum state defendants. Accordingly, *Shutts* requires an examination of *both* plaintiffs' and defendants' contacts with the forum state. *See Pizza Time*, 112 F.R.D. at 17–18; *see also Diasonics*, slip op. at 11–12; *see also Computer Memories*, 111 F.R.D. at 686–87. Focusing on only the foreign state plaintiffs' contacts with the forum state would raise the constitutional minimum of *Shutts* to an insurmountable barrier for *any* nation wide class action.

### C. *Reliance*

■ The court retreats from *McFarland*[9] and *Eagle* to the extent these decisions hold class certification improper because individual issues of proof as to reliance will predominate. *McFarland*, 96 F.R.D. at 364; *Eagle*, slip op. at 24–25. The court reaffirms *Jackson* on this point. 102 F.R.D. at 847 n. 14.

---

**8.** The court notes that the *Pizza Time* and *Diasonics* rationale would be inapplicable where two groups of plaintiffs sought to certify nation-wide state claim class actions in different states.

**9.** The last sentence in the second full paragraph at page 364 in *McFarland* contains a typographical error. That sentence should read: "Thus, there can be no class action certified here where the common issues do not predominate."

*Vasquez v. Superior Court,* 4 Cal.3d 800, 814, 94 Cal.Rptr. 796, 484 P.2d 964 (1971), and subsequent decisions, recognize that where material misrepresentations are made to class members, at least an inference of reliance arises as to the entire class. *See Activision,* 621 F.Supp. at 431; *cf. Hudson v. Capital Management International, Inc.,* 565 F.Supp. 615, 630 (N.D. Cal.1983) (*Vasquez* presumption of reliance [10] inapplicable where no uniform representations are made to class members). Furthermore, individual testimony of reliance by each plaintiff is not required. *Vasquez,* 4 Cal.3d at 814, 94 Cal.Rptr. 796, 484 P.2d 964 ("The rule in this state and elsewhere is that it is not necessary to show reliance upon false representations by direct evidence.") The court finds that individual issues of proof as to reliance do not preclude conditional certification of this plaintiff class. *See Jackson,* 102 F.R.D. at 847 n. 14; *see also Activision,* 621 F.Supp. at 431.

### D. *Analysis*

#### 1. *Conflicts Test*

■ Defendants have adequately shown that the law of foreign jurisdictions conflicts with California fraud law.[11] To the extent that these foreign states provide their plaintiffs with a standard of recovery more favorable than California law, these foreign states have an interest in having their law applied. *See Activision,* 621 F.Supp. at 430 (true conflict exists where foreign state has consumer protection laws

more favorable to foreign state plaintiffs than California consumer protection laws). The court *assumes* for purposes of this analysis that defendants have met this second prong of the conflicts test. The crucial issue is whether defendants have carried their burden of showing that the foreign states have a greater interest in having their law applied than California has in having its law applied. *Harmsen,* 693 F.2d at 947. The court finds that defendants have failed to carry this burden.

The court follows the reasoning of *Diasonics* and *Pizza Time* on this issue. The actual choice for the foreign states is whether to allow their residents' common law fraud claims to proceed under California law—or not at all.[12] *Diasonics,* at 8. Given this reality, the court finds that the foreign states will generally have a greater interest in "having the injuries of its citizens ... compensated under another state's law than ... not at all." *Pizza Time,* 112 F.R.D. at 20. Accordingly, the court finds that at this stage of the litigation,[13] the prospect of twenty-two (22) different state laws controlling the common law fraud claims is illusory. Accordingly, no predominance of individual issues or "management" difficulties within the meaning of Rule 23(b)(3) prevent conditional certification of the pendent state law claims at this time.

#### 2. *Shutts Test*

■ The court finds that application of California law violates neither the Due Process nor Full Faith and Credit Clauses of

---

**10.** *Vasquez* specifically held that "at least an inference" of reliance arises where material misrepresentations are made to class members.

**11.** Defendants identify four main areas where California and foreign state fraud law differ: (1) burden of proof, (2) punitive damages, (3) scope of duty regarding negligent misrepresentation, and (4) defenses to negligent misrepresentation. Company Defendants' Opposition Memorandum, at 16–19 n. 10. However, as to burden of proof and defenses to negligent misrepresentation, only "false conflicts" exist because California law appears more favorable to

plaintiffs than foreign state law. *See Diasonics,* slip op. at 5–6.

**12.** Where the common law fraud claims are large enough to litigate individually, foreign state plaintiffs are protected by the "opt out" provision of Rule 23(b)(3).

**13.** Should conflict of law problems arise later in the litigation such that class treatment of the fraud claims becomes inappropriate, the court may decertify the class or make any other necessary modifications in the structure of the litigation. *See Computer Memories,* 111 F.R.D. at 686 n. 7.

the Constitution.[14] Defendants focus exclusively on the limited contacts of the foreign state plaintiffs with California. *Shutts*, however, requires an examination of the contacts between plaintiffs' "claims" and the forum state. 472 U.S. at 821, 105 S.Ct. at 2980, 86 L.Ed.2d at 648. As previously discussed, the "claims" herein involve forum state defendants. The court finds that a "significant contact or aggregation of contacts" exist within the rule of *Shutts*. *E.g.*, Seagate is headquartered in California (¶ 5); dissemination of the Registration Statement, prospectus, and various annual and quarterly reports occurred in California (¶ 5); Robertson, Colman and Stephens is headquartered in California (¶ 9(c)); individual defendants are California residents (¶¶ 10–18); prospective witnesses reside in California (¶ 5). Furthermore, California has an "interest" within the rule of *Shutts* in the allegedly fraudulent conduct of California residents perpetrated primarily in California. The court notes that similar defendant contacts with California have been consistently found sufficient to meet the *Shutts* test. *See Pizza Time*, 112 F.R.D. at 18; *see also Diasonics*, slip op. at 11–12; *see also Computer Memories Litigation*, 111 F.R.D. at 686.

### 3. Reliance

The court finds this issue suitable for class treatment at this time. *See Jackson*, 102 F.R.D. at 847 n. 14.; *see also Activision*, 621 F.Supp. at 431.

### D. Conclusion

The pendent state law claims are HEREBY CONDITIONALLY CERTIFIED pursuant to Rule 23(b)(3).

## IV. CERTIFICATION OF DEFENDANT UNDERWRITER CLASS

■ Plaintiffs seek certification of the following defendant underwriter class:

[A]ll underwriters who, pursuant to the single Underwriting Agreement, participated in the registered public offering and sold shares of Seagate common stock on or about February 9, 1983, for which they were paid fees of approximately $3 million. Each member of the Underwriter Class sold the issuer's and/or the selling shareholders' Seagate common stock directly to members of the Plaintiff Class in the public offering.

¶ 31. This proposed class consists of approximately seventy-three underwriters. ¶ 32. As to the § 12(2) claim, plaintiffs seek certification of the single issue of "whether the Registration Statement and Prospectus were materially misleading." ¶ 36. The court examines whether all the requirements of Rule 23(a) are met—along with one of the requirements of Rule 23(b).

### A. Rule 23(a)

#### 1. Numerosity

The proposed class of seventy-three underwriters is so numerous as to make joinder impracticable.

#### 2. Commonality

This requirement is met. *See McFarland*, 96 F.R.D. at 365 (Rule 23(a)(2) requirement met where common issues of material misrepresentation, knowledge, and due diligence exist).

#### 3. Typicality

This requirement is met. *See McFarland*, 96 F.R.D. at 365.

---

**14.** *Computer Memories* and *Diasonics* initially analyze the *Harmsen* conflicts of law question, and then analyze whether application of California law would be consistent with *Shutts*. In contrast, *Pizza Time* views *Shutts* as a "threshold inquiry" preceding the *Harmsen* conflicts of law question. From a practical viewpoint, a finding that California law would *not* govern pursuant to the conflicts test obviates the *Shutts* inquiry. Furthermore, *Shutts* is concerned with limiting the application of a states' substantive law to foreign plaintiffs' claims—rather than questioning whether the state can constitutionally apply its conflicts of law test at all. For these reasons, it appears that the *Shutts* inquiry should follow—not precede—the conflicts of law determination. *See generally, Ashwander v. Valley Authority*, 297 U.S. 288, 347, 56 S.Ct. 466, 483, 80 L.Ed. 688 (Brandeis, J. concurring) ("Thus, if a case can be decided on either of two grounds, one involving a constitutional question, the other a question of statutory construction or general law, the court will decide only the latter. [citations omitted].")

#### 4. *Adequacy*

Defendants oppose certification of the § `11 class because "potential conflicts [exist] between the co-lead underwriters and participating underwriters." Co-Lead Underwriter Defendants Opposition Memorandum, at 2. Such "potential conflicts" arise, however, only after a finding that the Registration Statement and Prospectus were materially misleading. Such a prospective conflict is insufficient to defeat class certification at this time. *See Jackson,* 102 F.R.D. at 848; *see also McFarland,* 96 F.R.D. at 365–66 ("If it later develops that there is some antagonism between Lehman and Blyth and the other underwriters, the Court retains the power to amend the class or to change the class representative.")

### B. *Rule 23(b)*

Defendants do not challenge the certification of the § 11 claims pursuant to Rule 23(b)(3). Defendants do, however, oppose certification of the single issue § 12(2) class pursuant to Rule 23(b)(1)(A). Certification is proper pursuant to (b)(1)(A) where the party opposing the class (plaintiffs) would be exposed to "incompatible standards of conduct" absent certification of the defendant class. Unlike certification pursuant to (b)(3), (b)(1)(A) provides no "opt out" option for class members. *See Jackson,* 102 F.R.D. at 849. Certification pursuant to (b)(1)(A) also entails less detailed notice to class members than certification pursuant to (b)(3). *Id.*

Upon review of the pertinent authorities, the court finds merit in defendants' position. Accordingly, the single issue § 12(2) class is certified pursuant to Rule 23(b)(3) —not (b)(1)(A). The court retreats from its *McFarland, Jackson,* and *Eagle* decisions to the extent these decisions find certification of such a class proper pursuant to (b)(1)(A).

#### 1. *Background*

It is instructive to trace the development of certification of § 12(2) defendant underwriter classes in this district. *In Re Gap Stores Securities Litigation,* 79 F.R.D. 283 (N.D.Cal.1978) held that certification of a § 12(2) defendant underwriter class as to *all* § 12(2) issues is improper under (b)(3). The defendant class in *Gap Stores* was certified under (b)(1)(A). *In Re Itel Securities Litigation,* 89 F.R.D. 104 (N.D.Cal. 1981) apparently interpreted *Gap Stores* as precluding certification of a *single issue* § 12(2) defendant class pursuant to (b)(3). The *Itel* court, following *Gap Stores,* certified the defendant class pursuant to (b)(1)(A).

This court's *McFarland* decision—and later decisions in *Jackson* and *Eagle*—followed *Itel* and certified single issue § 12(2) defendant classes pursuant to (b)(1)(A). This approach has been criticized by recent decisions in this district. *See In Re Victor Technologies Litigation,* 102 F.R.D. 53, 63–65 (N.D.Cal.1984), *aff'd on other grounds,* 792 F.2d 862 (9th Cir.1986); *see also Activision,* 621 F.Supp. at 436–37 (N.D.Cal.1985); *see also Computer Memories,* 111 F.R.D. at 688.

Upon careful review of the issue, the court follows the *Victor, Activision* and *Computer Memories* decisions. It is difficult to conclude that plaintiffs would be subjected to "incompatible standards of conduct" absent certification of the defendant class. *Victor,* 102 F.R.D. at 64. The possibility that plaintiffs may recover from certain underwriters and not others on the § 12(2) claim is insufficient to justify certification under (b)(1)(A). *Id.* Furthermore, certification pursuant to (b)(1)(A) appears inconsistent with Ninth Circuit decisions limiting the applicability of that provision. *See LaMar v. H & B Novelty & Loan Company,* 489 F.2d 461, 466 (9th Cir.1973) (Advisory Committee Note to (b)(1)(A) states that this provision is applicable to actions such as "suit to declare bond issue invalid, to fix rights and duties of a riparian owner, and to determine a landowner's rights and duties respecting a claimed nuisance. [n. omitted]. ¶ Infrequently, if ever, will [certification of a (b)(1)(A) class be proper] ... when the action is for money damages. [n. omitted]."); *see also McDonnell Douglas Corp. v. U.S. District*

**274**

*Court*, 523 F.2d 1083, 1086 (9th Cir.1975), *cert. denied sub. nom. Flanagan v. McDonnell Douglas Corp.*, 425 U.S. 911, 96 S.Ct. 1506, 47 L.Ed.2d 761 (1976) ("[S]ubdivision (b)(1)(A) was not intended to permit class actions simply when separate actions would raise the same question of law").[15]

### 2. *Analysis*

The court finds the requirements of Rule 23(b)(3) met as to both the § 11 and single issue § 12(2) defendant underwriter classes. Common issues of law and fact predominate, and defendant classes provide a superior means of adjudicating the claims.

### C. *Conclusion*

The § 11 and the § 12(2) single issue defendant underwriter classes are HEREBY CONDITIONALLY CERTIFIED pursuant to Rule 23(b)(3).[16]

## V. CONCLUSION

Plaintiffs' certification motions are ruled upon consistent with this order. Plaintiffs are directed to file with the court within forty-five days of the filing date of this order proposed forms of notice of pendency of the class action.

IT IS SO ORDERED.

---

**15.** This court's *Eagle* decision reads *McDonnell* as inapplicable to certification of defendant classes. Slip op. at 23. The court retreats from this position. *McDonnell's* concern that the "detailed provisions of (b)(3)" not be "render[ed] superfluous" is better viewed as equally applicable to both plaintiff and defendant classes. 523 F.2d at 1086. *Jackson,* while correctly noting that as a practical matter defendant class members will probably forgo "opting out" in order to save defense costs, improperly ignores the statutory construction of Rule 23 articulated in *McDonnell.*

**16.** The court deferred ruling on the motion to dismiss the § 12(2) claims of Claiman until after the determination of the class certification motion. Claiman allegedly purchased his stock from Merril Lynch Pierce Fenner and Smith, Inc. This underwriter is not one of the co-lead underwriters named in the complaint. Because the court has certified the requested class of defendant underwriters, this § 12(2) claim against Merril Lynch Pierce Fenner and Smith, Inc. is proper. The motion to dismiss this claim is hereby denied.